1  XAVIER BECERRA
   Attorney General of California
2  BENJAMIN M. GLICKMAN
   Supervising Deputy Attorney General
3  JOHN W. KILLEEN, State Bar No. 258395
   RYAN A. HANLEY, State Bar No. 330729
4  Deputy Attorneys General
     1300 I Street, Suite
5    Sacramento, CA
     Telephone: (916) 210-6045
6    Fax: (916) 324-8835
     E-mail: John.Killeen@doj.ca.gov
7  *Attorneys for State Defendants Gavin
   Newsom, in his official capacity, and
8  California Department of Public Health, a
   governmental entity*

9                   IN THE UNITED STATES DISTRICT COURT

10                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14  **STEEL MMA, LLC, Performance**          Case No. '21CV0049 GPC DEB
    **360, LLC; TITLE Boxing Club, LLC;**
15  **F45 Bressi Ranch, LLC; Self Made**      [San Diego Superior Court Case No.
    **Training Center, LLC; Grinder Gym,**    37-2020-47441-CU-WM-CTL]
16  **LLC; Crossfit PB, LLC; San Diego**
    **Strength and Wellness, LLC; PMSI,**     Civil Rights
17  **dba APEX School of Movement, San**
    **Diego, LLC; Brainstorm Fitness,**       **NOTICE OF REMOVAL OF**
18  **LLC; Kickforce, LLC; ATOS Jiu-**        **ACTION**
    **Jitsu, LLC; Carlsbad Kick Boxing,**
19  **LLC; Yoga Box, LLC; F45 Carmel**        **[28 U.S.C. § 1441(a) (Federal**
    **Mountain Ranch, LLC; Shock**            **Question)]**
20  **Fitness, LLC; F-Max Fitness, SP;**
    **Hardcore Fitness, LLC; 10th Planet**
21  **San Diego Jiu Jitsu, LLC; The Boxing**
    **Club Sport & Fitness, LLC;**
22  **Powerhouse Pilates, LLC; F45 4s**
    **Ranch, LLC; F45 East Hillcrest,**
23  **LLC; F45 La Jolla, LLC; Perpetual**
    **Motion Solutions, Inc., dba APEX**
24  **School of Movement, San Diego,**

25                                    Plaintiffs,

26        **v.**

27
    **GAVIN NEWSOM, in his official**
28  **capacity as Governor of California,**

---

1  **CALIFORNIA DEPARTMENT OF**
**PUBLIC HEALTH, a governmental**
2  **entity; COUNTY OF SAN DIEGO, a**
**governmental entity; WILMA J.**
3  **WOOTEN, in her official capacity as**
**Public Health Officer, County of San**
4  **Diego; and DOES 1 through 100,**
**inclusive,**
5
6                                        Defendants.
7

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendants Gavin Newsom, in his official capacity as Governor of California, and California Department of Public Health, a governmental entity (collectively, "State Defendants"), hereby remove to this Court the state court action described below.

1.     On December 23, 2020, an action was commenced in the Superior Court of the State of California in and for the County of San Diego, Central Division, entitled *Steel MMA, LLC, et al., Plaintiffs, vs. Gavin Newsom et al., Defendants*, as case number 37-2020-00047441-CU-WM-CTL.

2.     On Sunday, January 10, 2011, counsel for Plaintiffs emailed a service copy of the complaint to State Defendants.  A copy of the complaint and exhibits is attached hereto as Exhibit 1.

3.     Also on Sunday, January 10, 2021, counsel for Plaintiffs emailed a service copy of an application for temporary restraining order.  Plaintiffs informed State Defendants that an ex parte hearing on Plaintiffs' request for temporary restraining order had been scheduled for January 13, 2021, at 9:00 a.m. in Department C-67 of the San Diego County Superior Court.  State Defendants are unaware if the application for temporary restraining order has been filed.  A copy of the application for temporary restraining order is attached hereto as Exhibit 2.

4.     **Jurisdiction:**  This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1441(a) in that it arises under numerous federal claims, including: 42 U.S.C. § 1983; the Due Process Clause of Fourteenth Amendment to the United States Constitution; the Free Speech Clause of the First Amendment to the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and the Takings Clause of the Fifth Amendment to the United States Constitution.

5.     All other defendants—namely, the County of San Diego and Wilma J. Wooten—have consented to the removal of this action, by telephone and email

communications with the undersigned counsel. *See Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (holding that to implement the unanimous joinder rule in seeking removal, "[o]ne defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient.")

Dated:  January 11, 2021                     Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General
RYAN A. HANLEY
Deputy Attorney General


*/s/ John W. Killeen*
JOHN W. KILLEEN
Deputy Attorney General
*Attorneys for State Defendants Gavin Newsom, in his official capacity, and California Department of Public Health, a governmental entity*

2

# Exhibit 1 to Notice of Removal

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7069 |

| PLAINTIFF(S) / PETITIONER(S): | Steel MMA LLC et.al. |
|---|---|
| DEFENDANT(S) / RESPONDENT(S): | Gavin Newsom et.al. |

| STEEL MMA LLC VS. NEWSOM [IMAGED] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT**<br>**and CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>37-2020-00047441-CU-WM-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Katherine Bacal                                   Department: C-69

## COMPLAINT/PETITION FILED: 12/23/2020

| **TYPE OF HEARING SCHEDULED** | **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|---|

Due to the COVID-19 pandemic, all hearings will be conducted remotely until further notice. Absent an order of the court, personal appearances at the hearing will not be allowed. For information on arranging telephonic or video appearances, contact CourtCall at (888)882-6878, or at www.courtcall.com. Please make arrangements with CourtCall as soon as possible.

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

**NOTICE OF CASE ASSIGNMENT**



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed.  Original documents should not be filed with pleadings.  If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program").  As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file.  The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150.  The paper filing will be imaged and held for 30 days.  After that time it will be destroyed and recycled.  **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.**  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

BATTA/FULKERSON, LLP
Charlotte Najar, Esq. (SBN) 319676
1899 McKee Street
San Diego, CA 92110
TELEPHONE NO.: 619-333-5555        FAX NO.: 619- 878-6635
ATTORNEY FOR *(Name):* Steel MMA, LLC, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: Central

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/23/2020** at 03:27:44 PM

Clerk of the Superior Court
By Cecile Van Pelt, Deputy Clerk

CASE NAME:
Steel MMA, LLC, et al. v. Gavin Newsom, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] **Counter**   [ ] **Joinder** <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 37-2020-00047441-CU-WM-CTL <br><br> JUDGE: Judge Katherine Bacal <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [✓] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* Declaratory and Injunctive Relief, et al.
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 23, 2020
Charlotte Najar, Esq.
_____ (TYPE OR PRINT NAME)        _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
    or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
  domain, landlord/tenant, or
  foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
  case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Additional Parties Attachment form is attached.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/23/2020** at 03:27:44 PM

Clerk of the Superior Court
By Cecile Van Pelt, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court - Central

330 West Broadway
San Diego, CA 92101

**CASE NUMBER:**
*(Número del Caso):* 37-2020-00047441-CU-WM-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Batta/Fulkerson, Charlotte Najar, Esq., 1899 McKee Street, San Diego, CA 92110 (619) 333-5555

| DATE: *(Fecha)* 12/24/2020 | Clerk, by *(Secretario)* C. Van Pelt | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Steel MMA, LLC, et al. v. Newsom, et al. | 37-2020-00047441-CU-WM-CTL |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

GAVIN NEWSOM, in his official capacity of Governor of California; CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, a governmental entity; COUNTY OF SAN DIEGO, a governmental entity; WILMA J. WOOTEN, in her official capacity as Public Health Officer, County of San Diego; and DOES 1 through 100, inclusive

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Steel MMA, LLC, et al. v. Newsom, et al. | 37-2020-00047441-CU-WM-CTL |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

Steel MMA, LLC; Performance 360, LLC; TITLE Boxing Club, LLC; F45 Bressi Ranch, LLC; Self Made Training Center, LLC; Grinder Gym, LLC; Crossfit PB, LLC; San Diego Strength and Wellness, LLC; PMSI, dba APEX School of Movement, San Diego, LLC; Brainstorm Fitness, LLC; Kickforce, LLC; ATOS Jiu-Jitsu, LLC; Carlsbad Kick Boxing, LLC; Yoga Box, LLC; F45 Carmel Mountain Ranch, LLC; Shock Fitness, LLC; F-Max Fitness, SP; Hardcore Fitness, LLC; 10th Planet San Diego Jiu Jitsu, LLC; The Boxing Club Sport & Fitness, LLC; Powerhouse Pilates, LLC; F45 4s Ranch, LLC; F45 East Hillcrest, LLC; F45 La Jolla, LLC; Perpetual Motion Solutions, Inc., dba APEX School of Movement, San Diego.

Page   1   of   1

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/23/2020** at 03:27:44 PM
Clerk of the Superior Court
By Cecile Van Pelt,Deputy Clerk

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BATTA/FULKERSON**
Charlotte Najar, Esq. (State Bar No. 319676)
1899 McKee Street
San Diego, CA 92110
Telephone: (619) 333-5555
Facsimile: (619) 878-6635

**HAMPARYAN PERSONAL INJURY LAWYERS**
Robert Hamparyan, Esq. (State Bar No. 181934)
275 West Market Street
San Diego, CA 92101
Telephone: (619) 550-1355
Facsimile: (619) 550-1356

Attorneys for Plaintiffs

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

Steel MMA, LLC; Performance 360, LLC; TITLE Boxing Club, LLC; F45 Bressi Ranch, LLC; Self Made Training Center, LLC; Grinder Gym, LLC; Crossfit PB, LLC; San Diego Strength and Wellness, LLC; PMSI, dba APEX School of Movement, San Diego, LLC; Brainstorm Fitness, LLC; Kickforce, LLC; ATOS Jiu-Jitsu, LLC; Carlsbad Kick Boxing, LLC; Yoga Box, LLC; F45 Carmel Mountain Ranch, LLC; Shock Fitness, LLC; F-Max Fitness, SP; Hardcore Fitness, LLC; 10th Planet San Diego Jiu Jitsu, LLC; The Boxing Club Sport & Fitness, LLC; Powerhouse Pilates, LLC; F45 4s Ranch, LLC; F45 East Hillcrest, LLC; F45 La Jolla, LLC; Perpetual Motion Solutions, Inc., dba APEX School of Movement, San Diego.

     Plaintiffs,

v.

GAVIN NEWSOM, in his official capacity of Governor of California; CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, a governmental entity; COUNTY OF SAN DIEGO, a governmental entity; WILMA J. WOOTEN, in her official capacity as Public Health Officer, County of San Diego; and DOES 1 through 100, inclusive,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No:  37-2020-00047441-CU-WM-CTL

**CIVIL COMPLAINT FOR:**

1. **DECLARATORY AND INJUNCTIVE RELIEF;**
2. **VIOLATION OF 42 U.S.C. § 1983 (COUNTS 1-3);**
3. **PETITION FOR WRIT OF MANDAMUS (CODE OF CIV. PROC. § 1085).**

- 1 -

1    Plaintiffs/Petitioners allege as follows:

2                              **PARITES AND VENUE**

3        1.      At all relevant times mentioned herein, Plaintiffs/Petitioners Steel MMA, LLC;

4    Performance 360, LLC; TITLE Boxing Club, LLC; F45 Bressi Ranch, LLC; Self Made Training

5    Center, LLC; Grinder Gym, LLC; Crossfit PB, LLC; San Diego Strength and Wellness, LLC; PMSI,

6    dba APEX School of Movement, San Diego, LLC; Brainstorm Fitness, LLC; Kickforce, LLC; ATOS

7    Jiu-Jitsu, LLC; Carlsbad Kick Boxing, LLC; Yoga Box, LLC; F45 Carmel Mountain Ranch, LLC;

8    Shock Fitness, LLC; F-Max Fitness, SP; Hardcore Fitness, LLC; 10th Planet San Diego Jiu Jitsu,

9    LLC; The Boxing Club Sport & Fitness, LLC; Powerhouse Pilates, LLC; F45 4s Ranch, LLC; F45

10   East Hillcrest, LLC;  F45 La Jolla, LLC and Perpetual Motion Solutions, Inc., dba APEX School of

11   Movement, San Diego ("Plaintiffs" and/or "Petitioners"), have operated within the City of San Diego,

12   County of San Diego, State of California, as gyms/fitness centers.

13       2.      Defendant/Respondent the County of San Diego (the "County") is and at all times

14   mentioned herein was, a governmental agency operating in the County of San Diego, City of San

15   Diego, State of California, and is directly responsible for the orders, actions, and directives at issue

16   in this Complaint, including the enforcement of Governor Newsom and the California Department of

17   Health's Blueprint for a Safer Economy and its orders, action, and directives at issue in this

18   Complaint.

19       3.      Defendant/Respondent Dr. Wilma J. Wooten ("Dr. Wooten") is the County's Public

20   Health Officer.  Dr. Wooten is responsible for devising and issuing health orders in her official

21   capacity with the County; issuing and interpreting health orders consistent with Governor Gavin

22   Newsom and California Department of Health's Blueprint for a Safer Economy and further

23   implementing their orders, actions, and directives at issue in this Complaint; and further interpreting

24   the orders of the State of California concerning the COVID-19 "Stay-at-Home" and closure orders as

25   applicable to the City and County of San Diego.

26   //

27   //

28   //

- 2 -

COMPLAINT

1      4.     Defendant/Respondent Governor Gavin Newsom (the "Governor") is and at all times

2  mentioned herein was the Governor of California.  Plaintiffs are informed and believe, and thereon

3  allege, that the Governor is responsible for issuing Executive Orders requiring industry and business

4  closures and general restrictions on businesses, including but not limited to the Blueprint for a Safer

5  Economy, which has further caused a shutdown and/or imposed greater restrictions of

6  Plaintiffs/Petitioners, and that which the County and Dr. Wooten have relied upon in exercising their

7  authority.

8      5.     The California Department of Public Health ("CDPH"), is, and at all relevant times

9  herein mentioned was, an executive branch of the State of California, which is under the Governor's

10  control and direction, and is further responsible for the policies upon which the County and Dr.

11  Wooten have relied upon in exercising their authority.

12      6.     Plaintiffs/Petitioners are ignorant of the true names and capacities of Defendants sued

13  herein as DOES 1 through 100, inclusive.  Thus, Plaintiff sues DOES 1 through 100 under fictitious

14  names.  Plaintiff will amend this Complaint by inserting their true names and capacities when

15  ascertained.

16      7.     Venue is proper in this jurisdiction in that all of the acts, events, orders, actions, and

17  directives at issue in this Complaint occurred within San Diego County, and Defendants/Petitioners

18  maintain offices, exercise their authority in their official capacities, and do and will enforce the orders,

19  actions, and directives at issue in this Complaint within San Diego County.

20      **GENERAL FACTS RELEVANT TO ALL CAUSES OF ACTION**

21      8.     This case stems from Defendants'/Respondents' health orders and directives shutting

22  down and prohibiting gyms and fitness centers from operating their businesses in San Diego County.

23      9.     On March 4, 2020, Governor Newsom declared a State of Emergency in California in

24  response to COVID-19.  The Governor's State of Emergency is attached as **Exhibit 1**.

25      10.    On March 19, 2020, the Governor further issued a Stay-at-Home Order, which

26  indefinitely prohibited the operation of any "non-essential business." (E.O. N-33-20.) The Stay-at-

27  Home Order is attached as **Exhibit 2**.

28  //

- 3 -

COMPLAINT

1    11.    On May 4, 2020, the Governor issued Executive Order N-60-20, which allowed non-

2  essential businesses in California to begin reopening in phases based on a four-tiered system.  The

3  reopening order granted the CDPH's State Public Health Officer the authority to determine which

4  specific businesses would be allowed to reopen, when, and under what conditions.  The Public Health

5  Officer was, and is, authorized "to take any action she deems necessary to protect the public health

6  [against] the threat posed by COVID-19."   The reopening order is attached as **Exhibit 3**.

7    12.    Dr. Wooten, acting as the Health Officer for San Diego County, adopted and

8  modified the Governor and State's restrictions and reopening plan through what would become an

9  ever-changing litany of health orders and regulations.

10  (https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/201

11  9-nCoV/health-order.html.)

12    13.    Gyms/fitness centers were not permitted to reopen until June 2020.

13    14.    In accordance with the Governor's orders, the CDPH imposed certain restrictions

14  and/or requirements on businesses, including but not limited to requiring businesses to submit detailed

15  written health and safety plans to their local public health authorities.

16    15.    Indoor gym/fitness centers were ordered to close in certain counties that were on the

17  State's County Monitoring List on July 13, 2020.  This order did not apply to gyms/fitness centers in

18  San Diego County, and thus did not apply to Plaintiffs/Petitioners.

19    16.    On or about August 28, 2020, the Governor announced, "The Blueprint for a Safer

20  Economy" (the "Blueprint), California's new reopening plan/regulations on businesses' reopening.

21  The Blueprint took effect on August 31, 2020.  It set forth a four-tier color scheme as follows, with

22  Tier 4 being the *least*  restrictive, and Tier 1 being the *most* restrictive: Yellow (Tier 4) – indicating

23  minimal COVID-19 spread and allowing nearly all businesses to resume indoor operations; Orange

24  (Tier 3) – allows some indoor business operations with modifications; Red (Tier 2) – requires closure

25  of some non-essential indoor business operations; and Purple (Tier 1) – indicating widespread

26  COVID-19 transmission in the county and requiring closure or significant limitation of nearly all

27  indoor business operations.  Counties are assigned a color based on the 7-day average of positive

28  percentages and the 7-day case average rates per 100,000 people.  Different industry sectors are

- 4 -

1    subject to different rules depending on each county's color-coding.  *See generally* Cal. Dep't. Health,

2    "Blueprint for a Safer Economy: Activity and Business Tiers," *available at*

3    https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-

4    19/Dimmer-Framework-September_2020.pdf.

5          17.    Gyms/fitness centers are specifically listed as a separate sector in the Blueprint.

6          18.    On or around September 1st, 2020 the County entered the "Red Category," and

7    numerous businesses that were arbitrarily deemed "nonessential" were permitted to reopen with

8    restrictions for inside operation.  (September 1, 2020 Order of Health Officer and Emergency

9    Regulation attached as **Exhibit 4**.

10         19.    Since announcing the Blueprint, the Governor has continued to arbitrarily and

11   randomly make changes in fundamental policy with no admitted scientific bases to support his orders.

12   For example, on September 22, 2020, the Governor arbitrarily decided nail salons could reopen for

13   indoor operations; however, the Governor failed to lift restrictions on other personal care industry

14   professionals.  Similarly, on October 20, 2020, the Governor again arbitrarily lifted restrictions on

15   indoor operations for the personal care industry, while failing to remove similar restrictions on other

16   industries.  A news article describing the October 20, 2020 arbitrary restriction enforcement is

17   attached as **Exhibit 5**.

18         20.    The Governor again revised his criteria for assigning colors to California counties on

19   September 30, 2020.  Under the new directives, the CDPH must consider not just health data figures

20   for a county but must also specifically consider infection rates in disadvantaged communities. Under

21   the Governor's revised directives, counties deemed to have "widespread risk" of transmitting

22   COVID-19 are put into the "Purple Tier."  In "purple" counties, gyms are prohibited from operating

23   indoors.  Again, other restrictions arbitrarily apply to other industries.

24         21.    After implementing the Blueprint, many counties have been reclassified based upon

25   changing COVID-19 infection rates.  Some counties have been reclassified into higher risk categories;

26   accordingly, some have been reclassified into lower risk categories.

27   //

28   //

COMPLAINT

22.     According to the Blueprint, a business that was closed for indoor operations might be permitted to reopen if the county's COVID-19 risk assessment improved after a period of three weeks at a less restrictive level; however, there was no longer any ability to skip over a tier, even if the county had operated at that less restrictive level for three weeks.  Accordingly, businesses that were permitted to resume indoor operation faced an imminent threat of being closed again if the county is again reclassified.

23.     Under the Blueprint's regime, counties are placed in a tier based on the greater of either test positivity and adjusted case rate per 100,000 population, both metrics being measured with a 7 day average and a 7 day lag.  Thus, a county whose case positivity rate is orange, but case rate is red is classified as being in the red tier. Further, on October 6, 2020, a new health equity metric mandated that in order to advance to the next less restrictive tier, a county would need to meet an equity metric or demonstrate investments targeted at eliminating disparities in COVID-19 transmission levels, depending on size.

24.     Under the Blueprint, San Diego County's case positivity rate continued to drop throughout November.  The measurement period announced on November 3, 2020 reflected a case positivity rate drop from 3.5% to 3.2%, which placed the County in the orange tier.  However, the case rate rose from 6.5% to 7.0%, thus placing the County in the purple tier.  The following measurement period announced on November 10, 2020 reflected the County's case positivity rate dropped even further to 2.6%; but the case rate was 8.9%, thus placing the County in the most restrictive purple tier.  Because San Diego had two consecutive weeks of purple tier reporting, the County was moved into the purple tier on or about Wednesday, November 11, 2020, and businesses, including gyms/fitness centers, were instructed to stop operating indoors.

25.     Based on case data *known* to Dr. Wooten, and which she sent to the State, the County's increased cases were in no way due to, caused by, or linked to gyms/fitness centers.  The County's *own* data at the time it was moved into the most restrictive purple tier, evidences that gyms/fitness centers were simply *not* linked to, causing, or in any way promulgating the spread of COVID-19.  In fact, the County Tier Adjudication ("Adjudication"), that Dr. Wooten issued and sent to the State clearly evidences that gyms/fitness centers were linked to only 0.4% of cases (39 of 9,646).  In fact,

- 6 -

1    this percentage was the *lowest* of all five sectors reported on the Adjudication, with a 1.4% differential

2    to the next reported sector.  It is further important to note that of this low 0.4%, there is no evidence

3    to suggest or support that these cases originated from or were transmitted at gyms/fitness centers.  In

4    fact, this number does not even support that any of these positive cases were ever in a gym or fitness

5    center while they were "positive."  Rather, this number at *most* suggests that out of 9,646 people, 39

6    throughout the entire County who tested positive, *may* have entered a gym or fitness center – *maybe*.

7    The Adjudication is attached as **Exhibit 6**.

8           26.    Interestingly, the retail sector, which has the *second highest* positivity rate of 6.6% of

9    cases (636 of 9,646), which is approximately 5.2% greater than gyms/fitness centers; yet, the retail

10   sector, even with this 5.2% greater case rate linkage was, at all relevant times mentioned herein, and

11   still is, permitted to operate indoors at a reduced capacity.  This is not meant to suggest that Plaintiffs

12   believe retail should be closed.  Rather, it is intended to show the arbitrary and capricious nature of

13   the State and County's regulations.  The County's data as set forth on the Adjudication shows *minimal*

14   COVID-19 spread among the five reported sectors overall.

15          27.    Additionally, outbreak data reported on or about November 10, 2020 when

16   gyms/fitness centers were forced to close indicates that the five sectors reported on the Adjudication

17   make up a very small percentage of the overall cases.  Of the 58,106 cases reported on November 10,

18   2020, only 5.5% of 3,192 cases were associated with confirmed community outbreaks.

19          28.    On the contrary, increases in cases were found mostly in worksites and among the 20-

20   29 year-old population.  As evidenced in the Adjudication and by Dr. Wooten on the County's behalf,

21   gyms were **not** the cause of the increase in case rate.

22          29.    In fact, Dr. Wooten represents in the Adjudication that penalizing gyms (among the

23   other imputed sectors), for case increase is wrong, acknowledging that gyms continue to take the

24   appropriate safety measures while trying to navigate through the ongoing pandemic, endless and

25   bewildering orders, and continued closings and re-openings.

26   //

27   //

28   //

30.     Additionally, with the implementation of San Diego's safe reopening compliance team, the County has implemented measures to complete outbreak assessments, enforce compliance, and educate the community.

31.     Despite the actual data and conclusions presented in the Adjudication that gyms should *not* be barred from conducting indoor operations, the CDPH, without any scientific justification or supporting data, summarily denied the Adjudication.

32.     Outdoor gyms/fitness centers, however, are permitted to remain open under the Purple Tier.

33.     While gyms and fitness centers, places where people go to maintain and improve their physical *and* mental health, have been deemed "non-essential," and have been forced to cease and desist all indoor operations, Defendants have deemed other businesses "essential," and permitted them to stay open, including but not limited to retail (which has a 5.2% higher positivity rate than gyms); bicycle shops; tobacco shops; and liquor stores. Thus, by this logic, the Governor and County Defendants have arbitrarily deemed the right to purchase alcohol and cigarettes essential, but the right to exercise and protect one's health non-essential.

34.     The Governor has stated he will continue to make changes to the Blueprint as he, himself, deems appropriate. Accordingly, this means that the Governor or CDPH may, at any time, arbitrarily make further changes to how and when a County is to be reclassified from one tier to the next. It further indicates that the Governor or CDPH may, at any time, arbitrarily change the restrictions applicable to any given industry within any color-coded county at any time.

35.     The County Defendants, including Dr. Wooten, have sent out over 125 cease and desist orders and seven Immediate Closure Orders through November 30, 2020 to various businesses in the community, including some Plaintiffs in the instant lawsuit. These cease and desist orders threaten both civil and criminal punishment.

//

//

//

//

- 8 -

COMPLAINT

36.     Defendants have no scientific evidence or data to support closing gyms/fitness centers. Plaintiffs have adhered to, and implemented, all safety protocols and procedures as directed by the County.  Plaintiffs do not present any risk to the spread of COVID-19.  This was further confirmed in a recent ruling by the Honorable Judge Wohlfeil on December 16, 2020 in *Midway Venture LLC v. County of San Diego*.  A copy of Judge Wholfeil's December 16, 2020 ruling is attached as **Exhibit 7.**

37.     The reason Plaintiffs present no risk of spreading COVID-19 is due to their unique ability to monitor, control, and maintain their environment in a way that other sectors, such as retail, cannot do, which predates their enhanced safety protocols and procedures implemented in response to the pandemic.  For example, gyms/fitness centers have a check-in process whereby they can actually monitor and track each and every person who enters their facility.  Thus, if someone learns they are sick, gyms/fitness centers are equipped to notify anyone who may have been in contact with the ill person.  Additionally, when members check in, there is always an employee there to welcome the member.  This allows the gym employee to take each member's temperature before entering the workout facility; and it further allows the gym employee to enforce mask requirements and remind members about social distancing and sanitizing equipment both before and after use.  Additionally, after a member finishes using (and sanitizing), a piece of equipment, fitness center employees are able to sanitize the equipment a second time before another member uses it.  Further, fitness centers are able to enforce time block schedules, or allow members to come in designated, scheduled 60 to 90 minute "shifts," and to close the gym between shifts to fully sanitize the entire facility.

38.     Retail and big-box stores, both which are permitted to remain open, even with their *significantly higher* positivity rates, do not monitor who is in their store; they do not require people to check in; they do not take shoppers' temperatures; they do not require appointments; they do not close down every hour and a half throughout the day to fully sanitize the store; they do not require shoppers to sanitize every item they touch while shopping; and they further do not have employees walking around and sanitizing every item (if any), that every shopper touches.

//

//

- 9 -

39.    Plaintiffs have fully complied with the County's Public Health Order and have implemented health and safety measures in accordance with, and in excess of the CDPH and County's orders, including: improved circulation measures; nose and mouth mask requirements for all members and staff; additional hand sanitation and disinfection stations; additional disinfectant materials; daily temperature checks; and personal protective materials for both staff and members.

40.    As a consequence of Defendants' closure orders and orders to cease and desist from engaging in activity protected by the First Amendment, Plaintiffs are and will continue to be threatened with criminal and civil penalties.  Additionally, Plaintiffs will continue to suffer a denial of due process and their civil rights on the enforcement of the challenged closure and cease and desist orders if Plaintiffs exercise their protected liberties to operate their businesses as other businesses in San Diego are permitted, implicitly or tacitly, to conduct indoor operations of gyms/fitness centers. Further, under the County's current reopening plan concerning the "Purple Tier," tobacco shops, liquor stores, retail, and big-box stores are allowed to remain open, despite the possibility of far more contact among members of the public, proven higher positivity rates, and less ability to control and monitor the environment than gyms/fitness centers.  A copy of relevant Cease and Desist Letters sent by Dr. Wooten to select Plaintiffs are attached as **Exhibit 8.**

41.    Plaintiffs are further informed and believe, and thereon allege, that while Plaintiffs have been prohibited from conducting indoor operations of their gyms/fitness centers, the County has allowed, either implicitly or tacitly, other gyms/fitness centers to conduct indoor operations such as The Gym and Boulevard Fitness.  Additionally, gyms/fitness centers are permitted to conduct outdoor operations under the Purple Tier, however, Defendants have not and cannot provide any scientific evidence or data to support that outdoor gyms/fitness centers are any safer than indoor gyms/fitness centers.  This, like the unfounded decision to ban indoor gyms/fitness centers, is another arbitrary and capricious decision not based on any articulable evidence.

//

//

//

//

- 10 -

COMPLAINT

42.     The limitation on allowing people to exercise and maintain their health is arbitrary and capricious, and is discriminatory toward gyms and fitness centers.  From the perspective of imposing restrictions to prevent the spread of COVID-19, Defendants have allowed other businesses, including various shops, retail, tobacco stores, and liquor stores to operate, while prohibiting Plaintiffs from operating under much more stringent safety protocols, and threating Plaintiffs with "criminal" liability for attempting to do so.  The order exudes unfairness.

43.     Further, the financial and non-financial losses the Plaintiffs have suffered as a result of Defendants' closure and cease and desist orders have been substantial.  The losses are the direct result of the discriminatory, irrational, and unequal restrictions flowing from Dr. Wooten's overreaching construction of the Governor's and the CDPH's orders.  If the closures and cease and desist orders are not immediately lifted, Plaintiffs may be required to close permanently.  Further, Plaintiffs are and will continue to be threatened with criminal and civil penalties, as well as suffer a denial of due process and their civil rights on the basis of the continued enforcement of the challenged closure and cease and desist orders if they exercise their protected freedoms and liberties similar to other businesses in the County.  This will result in significant losses not only to Plaintiffs, but also the employees who rely on their ability to work at and provide personal training services at gyms/fitness centers, as well as members of the public who rely on gyms/fitness centers to maintain their physical and mental health in a safe and regulated environment, who are now forced to either restrict or terminate their work outs due to a lack of equipment.  Defendants' restrictions will force personal trainers who need to earn a living to train outside the safety of regulated facilities, potentially at people's homes, with substantially less sanitary protections for both trainers and clients.   Plaintiffs themselves have no adequate remedy at law.  They are subject to further irreparable harm in that they are subject to arrest and fines for violations of the County's Cease and Desist orders.  No amount of money damages could adequately compensate Plaintiffs for the irreparable harm described herein, specifically the deprivation of constitutionally protected fundamental rights.

//

//

//

COMPLAINT

1

**RELIEF SOUGHT BY PLAINTIFFS/PETIONERS**

2   44.   As more fully set forth below, Defendants, relying on misinformation, or rather no

3   information at all, have become power obsessed and unhinged with their unreasonably expansive and

4   overly burdensome construction and application of the COVID-19 restrictions that completely

5   trample on and obliterate Plaintiffs' liberties, along with the liberties of San Diego citizens.  In Roman

6   Catholic Diocese of Brooklyn v. Cuomo, the United States Supreme Court recognized the dire threat

7   being posed by power-hungry politicians.  The Court held that "even in a pandemic, the Constitution

8   cannot be put away." (_Roman Catholic Diocese v. Cuomo_ (2020) 592 U.S. _ at *4 [Gorusch, J.

9   concurring.)  In his dissenting opinion in _Harvest Rock Churc, Inc. v. Newsom_ (9th Cir. 2020) ---

10   F.3d---2020 WL 5835219, Justice O'Scannlain further recognized this threat, opining that COVID-

11   19 restrictions are a "complex morass," which are not content neutral in their application.  Defendants'

12   clear abuse of power must be stopped, and their Orwellian rules that are being disguised as a means

13   of protecting society from the spread of COVID-19 to circumvent and undermine the Constitution

14   must be stopped by the courts.  Accordingly, among other remedies, Plaintiffs seek the following: (1)

15   equitable injunctive relief to enjoin the enforcement of the closure and cease and desist orders; (2)

16   declaratory relief from this Court in declaring that the orders of the State and County violate Plaintiffs'

17   civil rights under: (a) 42 U.S.C. Section 1983 of the Federal Civil Rights Act, (b) Due Process, and

18   (c) Equal Protection Clauses of the 5th and 14th Amendments, (d) the First Amendment, and (e)

19   Sections 1, 2, 7, 19, and 24 of Article 1 to the California Constitution; (3) a Writ of Mandate

20   compelling the County of San Diego to issue clear guidelines to allow gyms to resume indoor

21   operations; (4) attorney's fees and costs for the reasonable and necessary legal services provided by

22   Plaintiffs' counsel, where permitted by law' and (5) for such other and further relief this Honorable

23   Court deems just and appropriate.

24   //

25   //

26   //

27   //

28   //

- 12 -

COMPLAINT

## FIRST CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Against all Defendants and DOES 1 through 100)

45.    Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1 through 44, as though fully set forth herein.

46.    As a result of the acts, policies, procedures, and/or orders mentioned above that were and/or are created, adopted, and/or enforced under color of law by Defendants and DOES 1 through 100, Plaintiffs have been deprived of their First Amendment rights of free speech and free expressive association.    The restrictions at issue lack any rational basis, are arbitrary, capricious, vague, overbroad, and are a palpable invasion of rights secured by fundamental law in violation of the Equal Protection Clause of both the United States Constitution and California Constitution.    The coveted equal protection guarantees of the Fourteenth Amendment are clearly violated when the government treats an individual disparately as compared to other similarly situated persons, and that disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

47.    Plaintiffs are informed and believe, and thereon allege, that Defendants and DOES 1 through 100 believe they are acting within their authority to completely trample on Plaintiffs' Constitutional rights based on the Governor's orders and based on their own claimed authority to prohibit all gyms/fitness centers from conducting indoor operations, irrespective of the protected Constitutional rights afforded to Plaintiffs and all those similarly situated.    As a result, an actual controversy has arisen and currently exists between Plaintiffs and Defendants/DOES 1 through 100. Accordingly, Plaintiffs seek a declaration of their right to resume indoor operations at their gyms/fitness facilities in compliance with the County's and CDPH's health and safety orders that Plaintiffs were already, and successfully, operating under.    Plaintiffs further seek a declaration preventing Defendants from completely prohibiting all indoor operations of gyms/fitness centers, requiring Defendants to provide for clear guidance that would provide for gyms/fitness centers to operate indoors in the City and County of San Diego.

//

//

- 13 -

COMPLAINT

1      48.    Plaintiffs are further informed and believe, and thereon allege, that Defendants dispute

2 Plaintiffs' contention above concerning Defendants' obligations, and that absent a declaratory

3 judgment and injunction issued by this Court, Defendants intend to continue violating Plaintiffs'

4 rights.

5                   **SECOND CAUSE OF ACTION**

6                  **Violation of 42 U.S.C. § 1983**

7          **(Against All Defendants and DOES 1 through 100)**

8      49.    Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1

9 through 48, above, as though fully set forth herein.

10     50.    42 U.S.C. Section 1983 was enacted "'to deter state actors from using the badge of

11 their authority to deprive individuals of their federally guaranteed rights and to provide relief to

12 victims if such deference fails.'" (*Modacure v. B&B Vehicle Processing, Inc.* (2018) 30 Cal. App. 5th

13 690,693, quoting *Wyatt v. Cole* (1992) 504 U.S. 158, 161.)  A showing that a plaintiff has been

14 deprived of a federally protected right by a defendant acting under color of state law supports a claim

15 under 42 United States Code Section 1983.  (*Id*. at 694.)

16     51.    Plaintiffs are informed and believe, and thereon allege, that at all relevant times

17 mentioned herein, the acts and orders of Defendants and DOES 1 through 100 at issue were and are

18 being performed under color of law, thus constituting state action pursuant to 42 U.S.C. Section 1983.

19 These actions violate Plaintiffs' civil rights as follows:

20     **Count One** – Violation of the Free Speech Clause of the First Amendment to the

21 United States Constitution, Applicable through the Fourteenth Amendment and Violation of Article

22 1, Section 2 of the California Constitution

23     52.    Plaintiffs operate gyms/fitness centers that provide resources to members of the public

24 to maintain and improve their physical and mental health, as well as personal trainers to provide

25 personal training services, through the expressive use of their persons.  Such expression is protected

26 by free speech rights and free expressive association.  The closures and cease and desist orders

27 imposed upon and issued to Plaintiffs expressly prohibit this type of speech and expressive conduct,

28 and based upon the facts alleged in this Complaint that gyms/fitness centers are permitted to operate

- 14 -

1  outdoors, by Defendants, and further that indoor operations are permitted by Defendants, either

2  implicitly or tacitly, at other gyms/fitness centers, the limitations are targeting the content of the

3  speech and are presumptively unconstitutional. (*Reed v. Town of Gilbert* (2015) 576 U.S. 155, 163-

4  164.) Thus, the restrictions imposed by Defendants' closure order and cease and desist orders

5  constitute content-based speech prohibition.

6       **Count Two** – Violation of the Equal Protection Clause of the Fourteenth Amendment to

7  the United States Constitution and Violation of Article 1, Section 7 of the California Constitution

8       53.    As a result of the acts, policies, procedures, and/or orders mentioned above that were

9  and/or are created, adopted, and/or enforced under color of law by Defendants and DOES 1 through

10  100, Defendants have deprived Plaintiffs of the equal protection of law guaranteed under the Equal

11  Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §

12  1983, as well as the right to equal protection under the California Constitution. As alleged in this

13  Complaint, Defendants' closure orders and cease and desist orders deprive Plaintiffs of their

14  fundamental rights and freedoms by prohibiting Plaintiffs to conduct indoor operations or to allow

15  personal training or exercising at their facilities, yet providing exceptions for other activity and

16  conduct that is similar, if not identical, regarding its impacts and effects related to the prevention of

17  the spread of COVID-19. The challenged orders and measures lack any rational basis and are further

18  arbitrary, capricious, and vague. The challenged orders and measures further clearly invade the rights

19  secured by fundamental law in violation of the Equal Protection Clause.

20       **Count Three** – Violation of Plaintiffs' Due Process Rights Comprise a Taking in

21  Violation of the Fifth and Fourteenth Amendments to the United States Constitution and Violation of

22  Article 1, Section 7 of the California Constitution

23       54.    Defendants, with no due process whatsoever, have denied Plaintiffs the right to

24  conduct indoor business operations and to allow personal training and exercising at their facilities and

25  have taken away Plaintiffs' property rights and liberties without due process of law. Defendants have

26  failed to provide any scientific evidence or data regarding the bases of the closure and cease and desist

27  orders and have acted tyrannically in simply issuing these orders without any justification,

28  clarification, or exceptions. Plaintiffs have a fundamental and Constitutionally protected interest in

1    the use and enjoyment of their facilities.  Plaintiffs have no adequate remedy at law, and unless

2    Defendants are enjoined from continuing to implement and enforce the closure, cease and desist,

3    and/or other similar orders, Plaintiffs, along with members of the public, will suffer serious and

4    irreparable harm to their coveted constitutional rights.

5                                **THIRD CAUSE OF ACTION**

6                         **Writ of Mandate – Code Civ. Proc. § 1085**

7                  **(Against the County, Dr. Wooten, and DOES 1 through 100)**

8          55.    Plaintiffs and Petitioners reallege and incorporate by reference the allegations in

9    paragraphs 1 through 54, above, as though fully set forth herein.

10         56.    "A writ of mandate may be issued by any court to any . . . person, to compel the

11   performance of an act which the law specifically enjoins, . . . and from which the party is unlawfully

12   precluded by that inferior tribunal, corporation, board, or person." (Code Civ. Proc. § 1085.)  Here,

13   the County, Dr. Wooten, and DOES 1 through 100 are infringing upon Plaintiffs' constitutional rights

14   at its expense, including freedom of speech and equal protection.  Further, Defendants/Respondents

15   have, under the guise of COVID-19 safety concerns, discriminatorily and arbitrarily prohibited

16   Plaintiffs/Petitioners from exercising their First Amendment rights.  As a result, Plaintiffs/Petitioners

17   have suffered and continue to suffer loss of liberty as well as economic losses

18         57.    Plaintiffs/Petitioners have no adequate remedy at law.  Unless

19   Defendants/Respondents are enjoined from continuing to implement and enforce the closure, cease

20   and desist, or any other order they may claim authorizes them to prevent people from providing

21   personal training and/or working out at Plaintiffs' facilities, Plaintiffs/Petitioners will continue to be

22   subject to arrest and significant fines for violations of the County's Cease and Desist Orders and thus

23   will suffer serious and irreparable harm to their constitutional rights as they.

24         58.    This suit is for Injunctive and Declaratory relief at this point in time.  This suit is in no

25   way meant to preclude Plaintiffs from later seeking to recover any and all actual, consequential, and

26   special damages, including but not limited to loss of profits, to which Plaintiffs are entitled.

27   //

28   //

COMPLAINT

**<u>PRAYER</u>**

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

<u>On the First Cause of Action</u>:

1.      For a determination of the rights and obligations of Plaintiffs as it relates to all issues encompassed by the dispute alleged above, and that the Court issue a declaration finding as follows:

      a.   Plaintiffs are entitled to conduct indoor operations at their facility and to permit personal training and exercising under the reasonable restrictions set forth above;

      b.   Defendants are enjoined from completely prohibiting gyms/fitness centers from operating indoors; and

      c.   Recognizing that Plaintiffs' Constitutional rights to free speech and free expressive conduct are not eliminated as a result of COVID-19 restrictions and the pandemic.

2.      All appropriate orders to carry out the Court's declaration of Plaintiffs' rights, including injunctive relief.

<u>On the Second Cause of Action</u>:

1.      Declare the provisions of the closure orders, cease and desist orders, or any other related orders, to be violative of the United States and California Constitutional provisions stated above.

2.      For the issuance of a Temporary Restraining Order and/or Preliminary Injunction restraining and prohibiting any governmental entity or law enforcement officer from applying and enforcing the closure orders, cease and desist orders, or any other related orders, that prohibit Plaintiffs from being permitted to conduct indoor operations and allow personal training and exercising at their facilities under the restrictions set forth above, and finding that Plaintiffs are exempt from all of the requirements of the cease and desist orders.

3.      For the issuance of a Permanent Injunction restraining and prohibiting any governmental entity or law enforcement officer from applying and enforcing the closure orders, cease and desist orders, or any other related orders, that prohibit

- 17 -

COMPLAINT

1 Plaintiffs from being permitted to conduct indoor operations and allow personal

2 training and exercising at their facilities under the restrictions set forth above, and

3 finding that Plaintiffs are exempt from all of the requirements of the cease and desist

4 orders.

5 4. Award Plaintiffs any and all attorney's fees and costs as authorized by law.

6 <u>On the Third Cause of Action (Writ of Mandate)</u>:

7 1. A peremptory writ of mandate issued pursuant to Code of Civil Procedure § 1085,

8 compelling Defendants/Respondents to set aside their cease and desist orders, and to

9 allow for Plaintiffs/Petitioners to conduct indoor operations and allow personal

10 training and exercising at their facilities.

11 2. Plaintiffs/Petitioners recover their attorney's fees, expenses, and costs in this action.

12 <u>On All Causes of Action</u>:

13 1. For injunctive relief.

14 2. For costs of suit and attorney's fees.

15 3. For such other and future relief as the Court finds just and reasonable.

19 Dated: December 23, 2020  BATTA|FULKERSON

21   By:

22    Charlotte Najar
    Attorneys for Plaintiff

- 18 -

COMPLAINT

# EXHIBIT 1

EXECUTIVE DEPARTMENT
STATE OF CALIFORNIA

**PROCLAMATION OF A STATE OF EMERGENCY**

**WHEREAS** in December 2019, an outbreak of respiratory illness due to a novel coronavirus (a disease now known as COVID-19), was first identified in Wuhan City, Hubei Province, China, and has spread outside of China, impacting more than 75 countries, including the United States; and

**WHEREAS** the State of California has been working in close collaboration with the national Centers for Disease Control and Prevention (CDC), with the United States Health and Human Services Agency, and with local health departments since December 2019 to monitor and plan for the potential spread of COVID-19 to the United States; and

**WHEREAS** on January 23, 2020, the CDC activated its Emergency Response System to provide ongoing support for the response to COVID-19 across the country; and

**WHEREAS** on January 24, 2020, the California Department of Public Health activated its Medical and Health Coordination Center and on March 2, 2020, the Office of Emergency Services activated the State Operations Center to support and guide state and local actions to preserve public health; and

**WHEREAS** the California Department of Public Health has been in regular communication with hospitals, clinics and other health providers and has provided guidance to health facilities and providers regarding COVID-19; and

**WHEREAS** as of March 4, 2020, across the globe, there are more than 94,000 confirmed cases of COVID-19, tragically resulting in more than 3,000 deaths worldwide; and

**WHEREAS** as of March 4, 2020, there are 129 confirmed cases of COVID-19 in the United States, including 53 in California, and more than 9,400 Californians across 49 counties are in home monitoring based on possible travel-based exposure to the virus, and officials expect the number of cases in California, the United States, and worldwide to increase; and

**WHEREAS** for more than a decade California has had a robust pandemic influenza plan, supported local governments in the development of local plans, and required that state and local plans be regularly updated and exercised; and

**WHEREAS** California has a strong federal, state and local public health and health care delivery system that has effectively responded to prior events including the H1N1 influenza virus in 2009, and most recently Ebola; and

**WHEREAS** experts anticipate that while a high percentage of individuals affected by COVID-19 will experience mild flu-like symptoms, some will have more serious symptoms and require hospitalization, particularly individuals who are elderly or already have underlying chronic health conditions; and

**WHEREAS** it is imperative to prepare for and respond to suspected or confirmed COVID-19 cases in California, to implement measures to mitigate the spread of COVID-19, and to prepare to respond to an increasing number of individuals requiring medical care and hospitalization; and

**WHEREAS** if COVID-19 spreads in California at a rate comparable to the rate of spread in other countries, the number of persons requiring medical care may exceed locally available resources, and controlling outbreaks minimizes the risk to the public, maintains the health and safety of the people of California, and limits the spread of infection in our communities and within the healthcare delivery system; and

**WHEREAS** personal protective equipment (PPE) is not necessary for use by the general population but appropriate PPE is one of the most effective ways to preserve and protect California's healthcare workforce at this critical time and to prevent the spread of COVID-19 broadly; and

**WHEREAS** state and local health departments must use all available preventative measures to combat the spread of COVID-19, which will require access to services, personnel, equipment, facilities, and other resources, potentially including resources beyond those currently available, to prepare for and respond to any potential cases and the spread of the virus; and

**WHEREAS** I find that conditions of Government Code section 8558(b), relating to the declaration of a State of Emergency, have been met; and

**WHEREAS** I find that the conditions caused by COVID-19 are likely to require the combined forces of a mutual aid region or regions to appropriately respond; and

**WHEREAS** under the provisions of Government Code section 8625(c), I find that local authority is inadequate to cope with the threat posed by COVID-19; and

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes, including the California Emergency Services Act, and in particular, Government Code section 8625, **HEREBY PROCLAIM A STATE OF EMERGENCY** to exist in California.

**IT IS HEREBY ORDERED THAT:**

1. In preparing for and responding to COVID-19, all agencies of the state government use and employ state personnel, equipment, and facilities or perform any and all activities consistent with the direction of the Office of Emergency Services and the State Emergency Plan, as well as the California Department of Public Health and the Emergency Medical Services Authority. Also, all residents are to heed the advice of emergency officials with regard to this emergency in order to protect their safety.

2. As necessary to assist local governments and for the protection of public health, state agencies shall enter into contracts to arrange for the procurement of materials, goods, and services needed to assist in preparing for, containing, responding to, mitigating the effects of, and recovering from the spread of COVID-19. Applicable provisions of the Government Code and the Public Contract Code, including but not limited to travel, advertising, and competitive bidding requirements, are suspended to the extent necessary to address the effects of COVID-19.

3. Any out-of-state personnel, including, but not limited to, medical personnel, entering California to assist in preparing for, responding to, mitigating the effects of, and recovering from COVID-19 shall be permitted to provide services in the same manner as prescribed in Government Code section 179.5, with respect to licensing and certification. Permission for any such individual rendering service is subject to the approval of the Director of the Emergency Medical Services Authority for medical personnel and the Director of the Office of Emergency Services for non-medical personnel and shall be in effect for a period of time not to exceed the duration of this emergency.

4. The time limitation set forth in Penal Code section 396, subdivision (b), prohibiting price gouging in time of emergency is hereby waived as it relates to emergency supplies and medical supplies. These price gouging protections shall be in effect through September 4, 2020.

5. Any state-owned properties that the Office of Emergency Services determines are suitable for use to assist in preparing for, responding to, mitigating the effects of, or recovering from COVID-19 shall be made available to the Office of Emergency Services for this purpose, notwithstanding any state or local law that would restrict, delay, or otherwise inhibit such use.

6. Any fairgrounds that the Office of Emergency Services determines are suitable to assist in preparing for, responding to, mitigating the effects of, or recovering from COVID-19 shall be made available to the Office of Emergency Services pursuant to the Emergency Services Act, Government Code section 8589. The Office of Emergency Services shall notify the fairgrounds of the intended use and can immediately use the fairgrounds without the fairground board of directors' approval, and

notwithstanding any state or local law that would restrict, delay, or otherwise inhibit such use.

7. The 30-day time period in Health and Safety Code section 101080, within which a local governing authority must renew a local health emergency, is hereby waived for the duration of this statewide emergency. Any such local health emergency will remain in effect until each local governing authority terminates its respective local health emergency.

8. The 60-day time period in Government Code section 8630, within which local government authorities must renew a local emergency, is hereby waived for the duration of this statewide emergency. Any local emergency proclaimed will remain in effect until each local governing authority terminates its respective local emergency.

9. The Office of Emergency Services shall provide assistance to local governments that have demonstrated extraordinary or disproportionate impacts from COVID-19, if appropriate and necessary, under the authority of the California Disaster Assistance Act, Government Code section 8680 et seq., and California Code of Regulations, Title 19, section 2900 et seq.

10. To ensure hospitals and other health facilities are able to adequately treat patients legally isolated as a result of COVID-19, the Director of the California Department of Public Health may waive any of the licensing requirements of Chapter 2 of Division 2 of the Health and Safety Code and accompanying regulations with respect to any hospital or health facility identified in Health and Safety Code section 1250. Any waiver shall include alternative measures that, under the circumstances, will allow the facilities to treat legally isolated patients while protecting public health and safety. Any facilities being granted a waiver shall be established and operated in accordance with the facility's required disaster and mass casualty plan. Any waivers granted pursuant to this paragraph shall be posted on the Department's website.

11. To support consistent practices across California, state departments, in coordination with the Office of Emergency Services, shall provide updated and specific guidance relating to preventing and mitigating COVID-19 to schools, employers, employees, first responders and community care facilities by no later than March 10, 2020.

12. To promptly respond for the protection of public health, state entities are, notwithstanding any other state or local law, authorized to share relevant medical information, limited to the patient's underlying health conditions, age, current condition, date of exposure, and possible contact tracing, as necessary to address the effect of the COVID-19 outbreak with state, local, federal, and nongovernmental partners, with such information to be used for the limited purposes of monitoring, investigation and control, and treatment and coordination of care. The

notification requirement of Civil Code section 1798.24, subdivision (i), is suspended.

13. Notwithstanding Health and Safety Code sections 1797.52 and 1797.218, during the course of this emergency, any EMT-P licensees shall have the authority to transport patients to medical facilities other than acute care hospitals when approved by the California EMS Authority. In order to carry out this order, to the extent that the provisions of Health and Safety Code sections 1797.52 and 1797.218 may prohibit EMT-P licensees from transporting patients to facilities other than acute care hospitals, those statutes are hereby suspended until the termination of this State of Emergency.

14. The Department of Social Services may, to the extent the Department deems necessary to respond to the threat of COVID-19, waive any provisions of the Health and Safety Code or Welfare and Institutions Code, and accompanying regulations, interim licensing standards, or other written policies or procedures with respect to the use, licensing, or approval of facilities or homes within the Department's jurisdiction set forth in the California Community Care Facilities Act (Health and Safety Code section 1500 et seq.), the California Child Day Care Facilities Act (Health and Safety Code section 1596.70 et seq.), and the California Residential Care Facilities for the Elderly Act (Health and Safety Code section 1569 et seq.). Any waivers granted pursuant to this paragraph shall be posted on the Department's website.

**I FURTHER DIRECT** that as soon as hereafter possible, this proclamation be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this proclamation.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 4th day of March 2020.

GAVIN NEWSOM
Governor of California

**ATTEST:**

_____
ALEX PADILLA
Secretary of State

EXHIBIT 2

### EXECUTIVE DEPARTMENT
### STATE OF CALIFORNIA

**EXECUTIVE ORDER N-33-20**

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or

destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

GAVIN NEWSOM
Governor of California

**ATTEST:**

ALEX PADILLA
Secretary of State

EXHIBIT 3

### EXECUTIVE ORDER N-60-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** on March 19, 2020, I issued Executive Order N-33-20, which directed all California residents to immediately heed current State public health directives; and

**WHEREAS** State public health directives, available at https://covid19.ca.gov/stay-home-except-for-essential-needs/, have ordered all California residents stay home except for essential needs, as defined in State public health directives; and

**WHEREAS** COVID-19 continues to menace public health throughout California; and

**WHEREAS** the extent to which COVID-19 menaces public health throughout California is expected to continue to evolve, and may vary from place to place within the State; and

**WHEREAS** California law promotes the preservation of public health by providing for local health officers—appointed by county boards of supervisors and other local authorities—in addition to providing for statewide authority by a State Public Health Officer; and

**WHEREAS** these local health officers, working in consultation with county boards of supervisors and other local authorities, are well positioned to understand the local needs of their communities; and

**WHEREAS** local governments are encouraged to coordinate with federally recognized California tribes located within or immediately adjacent to the external geographical boundaries of such local government jurisdiction; and

**WHEREAS** the global COVID-19 pandemic threatens the entire State, and coordination between state and local public health officials is therefore, and will continue to be, necessary to curb the spread of COVID-19 throughout the State; and

**WHEREAS** State public health officials have worked, and will continue to work, in consultation with their federal, state, and tribal government partners; and

**WHEREAS** the State Public Health Officer has articulated a four-stage framework—which includes provisions for the reopening of lower-risk businesses and spaces ("Stage Two"), to be followed by the reopening of higher-risk businesses and spaces ("Stage Three")—to allow Californians to gradually resume various activities while continuing to preserve public health in the face of COVID-19; and

**WHEREAS** the threat posed by COVID-19 is dynamic and ever-changing, and the State's response to COVID-19 (including implementation of the four-stage framework) should likewise retain the ability to be dynamic and flexible; and

**WHEREAS** to preserve this flexibility, and under the provisions of Government Code section 8571, I find that strict compliance with the Administrative Procedure Act, Government Code section 11340 et seq., would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8571, 8627, and 8665; and also in accordance with the authority vested in the State Public Health Officer by the laws of the State of California, including but not limited to Health and Safety Code sections 120125, 120130, 120135, 120140, 120145, 120150, 120175, and 131080; do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) All residents are directed to continue to obey State public health directives, as made available at https://covid19.ca.gov/stay-home-except-for-essential-needs/ and elsewhere as the State Public Health Officer may provide.

2) As the State moves to allow reopening of lower-risk businesses and spaces ("Stage Two"), and then to allow reopening of higher-risk businesses and spaces ("Stage Three"), the State Public Health Officer is directed to establish criteria and procedures—as set forth in this Paragraph 2—to determine whether and how particular local jurisdictions may implement public health measures that depart from the statewide directives of the State Public Health Officer.

In particular, the State Public Health Officer is directed to establish criteria to determine whether and how, in light of the extent to which the public health is menaced by COVID-19 from place to place within the State, local health officers may (during the relevant stages of reopening) issue directives to establish and implement public health measures less restrictive than any public health measures implemented on a statewide basis pursuant to the statewide directives of the State Public Health Officer.

The State Public Health Officer is further directed to establish procedures through which local health officers may (during the relevant stages of reopening) certify that, if their respective jurisdictions are subject to proposed public health measures (which they shall specify to the extent such specification may be required by the State Public Health Officer) that are less restrictive than public health measures implemented on a statewide basis pursuant to the statewide directives of the State Public Health Officer, the public health will not be menaced. The State Public Health Officer shall additionally establish procedures to permit, in a manner consistent with public health and

safety, local health officers who submit such certifications to establish and implement such less restrictive public health measures within their respective jurisdictions.

The State Public Health Officer may, from time to time and as she deems necessary to respond to the dynamic threat posed by COVID-19, revise the criteria and procedures set forth in this Paragraph 2. Nothing related to the establishment or implementation of such criteria or procedures, or any other aspect of this Order, shall be subject to the Administrative Procedure Act, Government Code section 11340 et seq. Nothing in this Paragraph 2 shall limit the authority of the State Public Health Officer to take any action she deems necessary to protect public health in the face of the threat posed by COVID-19, including (but not limited to) any necessary revision to the four-stage framework previously articulated by the State Public Health Officer.

3)  Nothing in this Order shall be construed to limit the existing authority of local health officers to establish and implement public health measures within their respective jurisdictions that are more restrictive than, or that otherwise exist in addition to, the public health measures imposed on a statewide basis pursuant to the statewide directives of the State Public Health Officer.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 4th day of May 2020.

_____
GAVIN NEWSOM
Governor of California

**ATTEST:**

_____
ALEX PADILLA
Secretary of State

EXHIBIT 4

**SUPERSEDED**



# County of San Diego

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES

## ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS
(Effective September 1, 2020)

Pursuant to California Health and Safety Code sections 101040, 120175, and 120175.5 (b) the Health Officer of the County of San Diego (Health Officer) **ORDERS AS FOLLOWS**:

Effective 12:01 a.m. on Tuesday, September 1, 2020 and continuing until further notice, the following will be in effect for San Diego County (county):

1. All persons are to remain in their homes or at their place of residence, except for employees or customers traveling to and from essential businesses or reopened businesses as defined in sections 10 and 11, below, or to participate in individual or family outdoor activity as allowed by this Order.

2. All public or private "gatherings," as defined in section 15 below, are prohibited.

3. All public, charter, and private schools  may  hold classes and other school activities only under circumstances permitted by the State and in compliance with the COVID-19 Industry Guidance: Schools and School - Based Programs, and as may be updated or superseded by further State guidance. Institutions of higher education may hold classes or other school activities only under circumstances permitted by the State and in compliance with the COVID – 19 Industry Guidance: Institutions of Higher Education and as may be updated or superseded by further State guidance.

4. Child daycare and child care providers shall operate in compliance with the measures set forth in State COVID-19 Updated Guidance: Child Care Programs and Providers and shall prepare and post a Safe Reopening Plan pursuant to section 11c, below.

5. "Non-essential personnel," as defined in section 15b below, are prohibited from entry into any hospital or long-term care facility.  All essential personnel who are COVID-19 positive or

EXHIBIT
**E**

SUPERSEDED

show any potential signs or symptoms of COVID-19 are strictly prohibited from entry into hospitals or long-term care facilities. Notwithstanding the foregoing, individuals requiring medical care for COVID-19 or related conditions may be admitted to hospitals or other medical facilities if the hospital or medical facility is appropriate for treating COVID-19 and has adequate precautions in place to protect its patients, medical personnel and staff.

6. Hospitals and <u>healthcare providers</u>, including dentists shall:
    a. Take measures to preserve and prioritize resources; and,
    b. May authorize and perform non-emergent or elective surgeries or procedures based on their determination of clinical need and supply capacity, and where consistent with State guidance.
    c. Nothing in this Order shall prevent physicians and other healthcare providers from conducting routine preventive care provided it conforms to any applicable State guidance.
    d. Nothing in this Order shall prevent dentists or dental hygienists from conducting routine preventive care provided it conforms to any applicable State guidance.

7. Hospitals, healthcare providers, pharmacies and commercial testing laboratories shall report all COVID-19 test results to the Public Health Officer immediately after such results are received.

8. Face coverings shall be worn  as described and required in California Department of Public Health Face Covering Guidance issued on June 18, 2020, (available at: https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf).

9. All businesses not meeting the definition of essential business or reopened business in section 10 and 11 below are referred to in this Order as "non-essential businesses" and shall be and remain closed for the duration of this Order. All essential businesses and reopened businesses must comply with the requirements of this Order. Notwithstanding the foregoing, any business may remain open if its employees and owners can provide its services from home, including by telecommuting, without direct contact with the public.

10. ESSENTIAL BUSINESSES
    a. "Essential business" is any business or activity (or a business/activity that employs/utilizes workers) designated by the State Public Health Officer as "Essential

SUPERSEDED

Critical Infrastructure Workers" set forth in: https://covid19.ca.gov/img/Essential CriticalInfrastructureWorkers.pdf) as that list may be updated from time-to-time, and referenced in Executive Order N-33-20 issued by the Governor of the State of California.

b. All essential businesses that allow members of the public to enter a facility must prepare and post a "Social Distancing and Sanitation Protocol" on the form available at: https://www.sandiegocounty .gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/SOCIAL_DISTANC ING_AND_SANITATION_PROTOCOL_04022020_V1.pdf ), or on a form required by another governmental entity requiring substantially similar information, for each of their facilities open to the public in the county. The Social Distancing and Sanitation Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and employees. A copy of the Social Distancing and Sanitation Protocol must also be provided to each employee performing work at the facility. All essential businesses shall implement the Social Distancing and Sanitation Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand. The Social Distancing and Sanitation Protocol must describe all measures required in section c below. Any business that fails to prepare and successfully implement a Social Distancing and Sanitation Protocol shall immediately close.

c. When the State of California has issued an industry guidance, or any subsequent amendments thereto, with mandatory or suggested restrictions and/or measures to be implemented by a particular sector of essential business, every essential business in that sector must comply with the guidance and shall include in its Social Distancing and Sanitation Protocol (prepared pursuant to section d, below) all of the measures listed in the industry guidance. Any mandatory measures required by this Order must also be included in a Social Distancing and Sanitation Protocol.

11. REOPENED BUSINESSES

a. "Reopened business" is a business that is not an essential business as defined in section 10a above, and has reopened in conformance with the State of California's Plan for Reducing COVID-19 and Adjusting Permitted Sector Activities to Keep Californians Healthy                    and                    Safe                    (available                    at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/COVID19CountyMonitoringOverview.aspx Statewide Public Health Officer Order, issued by the California Department of Health Services on August 28, 2020, all portions of which are operative in San Diego County

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

SUPERSEDED

effective         immediately,         and         available         at         {
https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-
19/8-28-20_Order-Plan-Reducing-COVID19-Adjusting-Permitted-Sectors-Signed.pdf}.   A
reopened business may open when the Public Health Officer has posted an
acknowledgement of the reopened status on the County of San Diego Coronavirus
website and the business has complied with the requirements of this Order.

b. The State of California's Blueprint for a Safer Economy establishes a four tier system for
reopening business sectors. Those business sectors listed in the "Substantial/Tier2" column of
the Activities and Business Tiers chart are allowed to reopen under the conditions set forth in
the chart.

    i. Every business in the following sectors listed in the Activities and Business Tiers
shall require all customers who receive services indoors or use indoor facilities to
sign in with their name and telephone number:

        1. Hair Salons & Barbershops
        2. Personal Care Services
        3. Gyms & Fitness Centers
        4. Restaurants, Wineries, Bars, Breweries, and Distilleries (where meal is
           provided) as required in section g below.

c. All reopened businesses, with the exception of restaurants, bars, wineries, distilleries
and breweries   which do not limit services to take-out or delivery, must prepare and
post    a    "Safe    Reopening    Plan"    on    the    form    available
at:https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiolog
y/covid19/Community_Sector_Support/BusinessesandEmployers/SafeReopeningPlan
Template.pdf for each of their facilities in the county.  Restaurants bars, wineries,
distilleries and breweries which do not limit services to take-out or delivery, must
prepare and post a "COVID-19 Restaurant Operating Protocol" on the form found at
https://www.sandiegocounty.gov/content/dam/sdc/deh/fhd/food/pdf/covid19sdrestaur
antoperatingprotocol_en.pdf  for each restaurant in the county.

d. The Safe Reopening Plan or COVID-19 Restaurant Operating Protocol must be posted
at or near the entrance of the relevant facility, and shall be easily viewable by the public
and employees.  A copy of the Safe Reopening Plan or COVID-19 Restaurant
Operating Protocol must also be provided to each employee performing work at the
facility. All reopened businesses shall implement the Safe Reopening Plan or COVID-
19 Restaurant Operating Protocol and provide evidence of its implementation to any
authority enforcing this Order upon demand. The Safe Reopening Plan or COVID-19
Restaurant Operating Protocol must describe all measures required in section e, below.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

SUPERSEDED

Any business that fails to prepare and comply with its Safe Reopening Plan or COVID-19 Restaurant Operating Protocol shall immediately close.

e.  When the State of California has issued an industry guidance, or any subsequent amendments thereto, with mandatory or suggested restrictions and/or measures to be implemented by a particular sector of reopened business, every reopened business in that sector must comply with the guidance and shall include in its Safe Reopening Plan or COVID-19 Restaurant Operating Protocol (prepared pursuant to section c, above) all of the measures listed in the industry guidance. Any mandatory measures required by this Order must also be included in a Social Distancing and Sanitation Protocol.

f.  All restaurants, bars, wineries, distilleries and breweries shall be closed from 10:00 p.m. until 5:00 a.m. every day. Guests already in the facility at 10:00 p.m. may remain in the facility until 11:00 p.m. Only staff needed to close, open or clean shall be in the facility between the hours of 11:00 p.m. and 5:00 a.m.

g.  All restaurants, bars, wineries, distilleries and breweries which are allowed to provide indoor service pursuant to the State of California Dine-in Restaurant Guidance shall comply with the following additional requirements applicable only to persons dining indoors:

   i.  Limiting persons sitting at a table to members of the same household is strongly encouraged.

   ii.  The restaurant shall obtain the name of each guest seated at a table and the telephone number of at least one guest and shall maintain the list of names and telephone numbers for three weeks.

   iii.  Guests will be required to wear face coverings at all times while in the facility, including when seated at a table before the meal is served and after the meal is finished

12. Each essential business and reopened business shall take all of the following actions if an employer becomes aware that an employee is diagnosed with COVID-19:

   i.  Promptly notify the County Department of Public Health that there is an employee diagnosed with COVID-19, together with the name, date of birth, and contact information of the employee.

   ii.  Cooperate with the County Department of Public Health's COVID-19 response team to identify and provide contact information for any persons exposed by the employee at the workplace.

   iii.  Provide notice of the exposure to any employees, and contractors (who regularly work at the workplace), who may have been exposed to COVID-19, as stated in the State's COVID-19 Employer Playbook for a Safe

SUPERSEDED

Reopening, available at {https://files.covid19.ca.gov/pdf/employer-playbook-for-safe-reopening--en.pdf}.

13. Outdoor Recreation

    a. Each public park and recreation area or facility, shall operate in compliance with the measures set forth in the State COVID-19 Industry Guidance: Campgrounds, RV Parks and Outdoor Recreation. The operator of the park shall prepare a Safe Reopening Plan pursuant to section 11, above, indicating how the park or recreation facility will implement the required measures. Any park or recreation area/facility at which the Protocol requirements cannot be effectively implemented may be required to close.

    b. Outdoor recreation instruction and day camps that comply with the State COVID-19 Industry Guidance: Day Camps, may be conducted in park and recreation areas/facilities.

14. Persons who have been diagnosed with COVID-19, or who are likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Isolation of All Persons with or Likely to have COVID-19", or as subsequently amended. Persons who have a close contact with a person who either has COVID-19, or is likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Quarantine of Persons Exposed to COVID-19," or as subsequently amended. Both orders are available at: https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/health-order.html. If a more specific isolation or quarantine order is issued to a person, that order shall be followed.

15. For purposes of this Order:

    a. "Gathering" is any event or convening that brings together more than one person in a single room or single indoor or outdoor space at the same time. A gathering does not include:

        i. A gathering consisting only of members of a single family or household.

        ii. Operations at airports, public transportation or other spaces where persons in transit are able to practice social distancing.

        iii. Operations at essential businesses as defined in section 15a above and reopened businesses as defined in 15f below and where the other requirements set forth in this Order are followed.

        iv. A religious service or cultural ceremony including a wedding ceremony which is allowed provided the State Guidance on Places of Worship and Providers of Religious Services and Cultural Ceremonies is followed.

Page 6 of 10

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

**SUPERSEDED**

However a wedding reception is a gathering and is not allowed.

    v. Outdoor protests in which participants maintain social distancing and wear face coverings at all times.

   b. "Non-essential personnel" are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the long-term care facility or hospital. Non-essential personnel do not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties. Non-essential personnel do not include visitors to hospitals and long-term care facilities who are granted entry by the facility's director, or designee, because they are family or friends who are visiting a resident in an end of life or similar situation, are parents or guardians visiting a child who is a patient, or because of any other circumstances deemed appropriate by the facility director, or designee, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

   c. "Social distancing" is maintaining a six-foot separation from all persons except for household members, first responders and medical providers or employees conducting temperature screenings.

16. This Order is issued as a result of the World Health Organization's declaration of a worldwide pandemic of COVID-19 disease, also known as "novel coronavirus."

17. This Order is issued based on scientific evidence regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect vulnerable members of the public from avoidable risk of serious illness or death resulting from exposure to COVID-19. The age, condition, and health of a significant portion of the population of the county places it at risk for serious health complications, including death, from COVID-19. Although most individuals who contract COVID-19 do not become seriously ill, persons with mild symptoms and asymptomatic persons with COVID-19 may place other vulnerable members of the public— such as older adults, and those with underlying health conditions—at significant risk.

18. The actions required by this Order are necessary to reduce the number of individuals who will be exposed to COVID-19, and will thereby slow the spread of COVID-19 in the county. By reducing the spread of COVID-19, this Order will help preserve critical and limited healthcare capacity in the county and will save lives.

SUPERSEDED

19. This Order is issued in accordance with, and incorporates by reference: a) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; b) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; c) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; d) the Proclamation of a State of Emergency issued by the Governor of the State of California on March 4, 2020; e) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19"; f) Proclamation 9984 regarding COVID-19 issued by the President of the United States on March 11, 2020; g) Executive Order N-33-20 issued by the Governor of the State of California on March 19, 2020; h) the "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes" issued by the CDC; i) COVID-19 guidance issued by the California Department of Public Health on including, but not limited to the Face Coverings Guidance issued on April 1, 2020; j) the State of California's "Resilience Roadmap;" the State of California's Plan for Reducing COVID-19 and Adjusting Permitted Sector Activities to Keep Californians Healthy and Safe; and, the California Statewide Public Health Officer Order dated August 28, 2020.

20. This Order is issued to prevent circumstances often present in gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event or are at a single location; and 4) the inability to ensure that such persons follow adequate hygienic practices.

21. This Order is issued to provide additional opportunities for recreational activities while also requiring additional protections from the spread of COVID-19 to the public who are taking advantage of these opportunities for recreational activities.   And providing additional protections for employees of essential businesses or reopened business and their customers/clients.

22. This Order is issued to protect the public health as businesses are allowed to reopen by requiring businesses to implement procedures necessary to ensure their employees and

Page 8 of 10

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

SUPERSEDED

customers comply with social distancing, sanitation and screening practices.

23. This Order comes after the release of substantial guidance from the Health Officer, the California Department of Public Health, the CDC, and other public health officials throughout the United States and around the world.

24. The statement of facts and circumstances set forth as justification for each Guidance issued by the California Department of Health Services that is referenced in this Order are hereby accepted and incorporated by reference into this Order.

25. Pursuant to Health and Safety Code section 120175.5 (b) all governmental entities in the county shall take necessary measures within the governmental entity's control to ensure compliance with this Order and to disseminate this Order to venues or locations within the entity's jurisdiction where gatherings may occur.

26. Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)

27. To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029.

SUPERSEDED

28. Once this Order takes effect it shall supersede the Order of the Health Officer and Emergency Regulations dated August 7, 2020.

**IT IS SO ORDERED:**

Date: August 31, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

---

EMERGENCY REGULATIONS

As Director of Emergency Services for the County of San Diego, I am authorized to promulgate regulations for the protection of life and property pursuant to Government Code Section 8634 and San Diego County Code section 31.103. The following shall be in effect for the duration of the Health Officer Order issued above which is incorporated in its entirety by reference:

The Health Officer Order shall be promulgated as a regulation for the protection of life and property.

Any person who violates or who refuses or willfully neglects to obey this regulation is subject to fine, imprisonment, or both. (Government Code section 8665.)

Date: August 31, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

EXHIBIT 5

# California to allow tattoo, massage parlors to reopen indoors with modifications

CALIFORNIA
by: Nexstar Media Wire

**Posted: Oct 20, 2020 / 12:46 PM PDT / Updated: Oct 20, 2020 / 07:30 PM PDT**

All personal care services, like getting a tattoo or a massage, are allowed to open indoors with modifications, the state's top public health official announced Tuesday.

California Health and Human Services Secretary Dr. Mark Ghaly said the state was adding all personal care services to the "purple tier" — or "widespread risk tier" — to join other services already open indoors like hair and nail salons, KTLA sister station KSEE/KGPE in Fresno reported.

Services that can now resume include tattoo parlors, day spas, hair removal, esthetician and massage businesses, Ghaly said.

"Based on a number of conversations, we are moving all personal care services able to resume operations indoors with the stated modifications in Tier 1, that is the purple tier. We started out with hair salons, barber shops open in Tier 1, we later added nail salons and today we are adding tattoo parlors, hair removal and massage businesses," Ghaly said. "All of those personal services as we have categorized them are now in Tier 1."

California hair salons and barbershops were given the green light to reopen indoors in August, followed by nail salons reopening in September.

Local jurisdictions may still set their own rules that are more restrictive, meaning personal services may remain closed in some areas.

In Los Angeles County, public health officials said they were reviewing the state recommendations and would consult with the Board of Supervisors about the timing for the additional openings.

In California, as of October 20, California has 874,077 confirmed cases of COVID-19, resulting in 16,992 deaths. The number of COVID-related deaths increased by 0.1 percent from the previous day's total of 16,970.

EXHIBIT 6

# Blueprint for a Safer Economy

## COVID-19 County Tier Adjudication Request

FOR San Diego County

Requested week for Tier Assignment Adjudication: 10/18/2020

## Background

On August 28, 2020, Governor Gavin Newsom unveiled the Blueprint for a Safer Economy, a statewide, stringent and slow plan for a safe progression of opening more businesses and activities in light of the pandemic. The plan imposed risk-based criteria on tightening and loosening COVID-19 allowable activities and defined a minimum length of time between changes to assess how any movement affects the trajectory of the disease based on a county's disease transmission metrics. As part of this framework, a county tier adjudication process was established to offer local jurisdictions the opportunity to raise questions concerning data discrepancies or other similar errors in the tier assignment process.

A county may submit this form as an official request to enter into a tier adjudication process.

## Timing and Processing of An Adjudication Request

Counties must submit their intent to request tier adjudication no later than Monday at 6pm regarding their tier metrics for that week. The full county tier adjudication form & any supporting documentation must be submitted by Wednesday at 5pm.  Once a county enters into tier adjudication with CDPH, the county's tier assignment at the time of the request will be held in the current tier until adjudication is complete.

An adjudication process cannot delay a tier change by more than one tier reporting period (the process cannot cross beyond the next Tuesday's tier assignment), and the county will be assigned to the tier determined by CDPH no later than Monday of the following week. If a request for adjudication concerns movement from Tier 2 to Tier 1, schools in the county that have not yet reopened may not reopen during tier adjudication.

The State Health Officer or designee will review and approve the final decision. CDPH will also post the request form and a summary of the final decision on the CDPH website after the county tier adjudication request package (completed form and supporting documents) and discussion between State and local officials have been completed.

**Reason for Adjudication Request- select all that apply and provide an explanation:**

☐ **DATA DISCREPANCY**: Using similar methodology for calculating the blueprint metrics, the county identifies a discrepancy between state and local data.

- Does the discrepancy pertain to adjusted case rate, test positivity or both?
- Please describe any additional detail pertaining to the discrepancy.
  - If the data discrepancy involves non-ELR data, please refer to Appendix A for instructions on the format and information that should be included as supporting documentation.

  Please enter relevant information for States consideration

☒ **Other additional justification to be considered:**

  Please provide relevant qualitative/contextual elements for the States consideration

  The County of San Diego has several qualitative/contextual elements for the State's consideration to stay in Tier 2/Red Tier.  They include:

  1. San Diego's increased cases are not due to the sectors impacted by moving into a more restrictive tier.
    a. Interview of Cases to Identify Potential Exposure Settings

In addition to your county's completed COVID-19 COUNTY TIER ADJUDICATION FORM, please include:

- Supporting data documentation following the instructions in Appendix A
  - How many separate documents will be provided, excluding this form, in connection with this request:  01 PDF including 7 chart
  - Please list names of any files being provided to ensure we have everything you intend to have reviewed in connection with this request:

  COSD Adjudication Data Charts_11.5.2020

A completed data summary table (see Appendix A)
Note: if a County is delayed in its submission of required information to inform the adjudication process, CDPH can elect to end or deny the adjudication request.

Form Updated 10/20/2020

**Instructions for submission:**

1. Submit request for tier adjudication to CDPH at
   countytieradjudication@cdph.ca.gov  no later than Monday, 6pm.
2. Submit county tier adjudication form, data summary table, and supporting
   documents, as separate documents, to CDPH no later than by 5pm Wednesday
   (within 2 days after the request for tier adjudication was sent) at
   countytieradjudication@cdph.ca.gov.
3. Data file should be sent encrypted. Does not need to be in zipped files.

I  Wilma J. Wooten, M.D., M.P.H.      hereby attest that I am duly authorized to sign
and act on behalf of  County of San Diego             .  I certify that the information
provided in the county tier adjudication request is true, accurate and complete to the
best of my knowledge.

I understand and consent that the California Department of Public Health (CDPH) will
post this information on the CDPH website and is public record.

Printed Name Wilma J. Wooten, M.D., M.P.H.

Signature

Position/Title Public Health Officer/Director

Date November 5, 2020

## CDPH Determination

Date of Determination: _____

Form Updated 10/20/2020

## Appendix A:

**Format Requested: Excel Files (send encrypted email if contains PHI)**

**1.  Metric: Adjusted Case rate discrepancy- related adjudication**

*Fields that we need information on:*

| Test Submitter | Episode Date* | Unique Case IDs | ELR or non-ELR | Test info (positive/ negative) | Confirmation of Address (county suffices) of case |
|---|---|---|---|---|---|
| | | | | | |

* Data should align with dates used for CDPH tier assignment.

**2.  Metric: Testing Positivity and/or Volume discrepancy- related adjudication**

*Fields that we need information on:*

| Test Submitter[1] | Specimen collection date* | Unique Case IDs | ELR or non-ELR | Test info (positive/ negative) | Type of test used (PCR/Antig en/POC) | Confirmation of Address (county suffices) of case |
|---|---|---|---|---|---|---|
| | | | | | | |

* Data should align with dates used for CDPH tier assignment.

**Download the** Tier Adjudication Summary Table **(Excel)**

---

[1] Counties are requested to submit a list of labs that are not reporting to CalREDIE via ELR or CalREDIE compatible csv files. Please indicate if these labs are currently in the process of onboarding onto CalREDIE.

Form Updated 10/20/2020

## Appendix A:

**Format Requested: Excel Files (send encrypted email if contains PHI)**

**1.  Metric: Adjusted Case rate discrepancy- related adjudication**

*Fields that we need information on:*

| Test Submitter | Episode Date* | Unique Case IDs | ELR or non-ELR | Test info (positive/ negative) | Confirmation of Address (county suffices) of case |
|---|---|---|---|---|---|
| | | | | | |

\* Data should align with dates used for CDPH tier assignment.

**2.  Metric: Testing Positivity and/or Volume discrepancy- related adjudication**

*Fields that we need information on:*

| Test Submitter [1] | Specimen collection date* | Unique Case IDs | ELR or non-ELR | Test info (positive/ negative) | Type of test used (PCR/Antig en/POC) | Confirmation of Address (county suffices) of case |
|---|---|---|---|---|---|---|
| | | | | | | |

\* Data should align with dates used for CDPH tier assignment.

**Download the** <u>Tier Adjudication Summary Table</u> **(Excel)**

Form Updated 10/20/20

---

[1] Counties are requested to submit a list of labs that are not reporting to CalREDIE via ELR or CalREDIE compatible csv files. Please indicate if these labs are currently in the process of onboarding onto CalREDIE.

Form Updated 10/20/2020

# Blueprint for a Safer Economy

## COVID-19 County Tier Adjudication

For the county of: **San Diego**

Requested week for Tier Assignment Adjudication: 11/04/2020

## Summary

San Diego County requests a tier adjudication for the tier assignment week of 11/4/2020 and provided qualitative and contextual elements for the State's consideration to remain in the Red Tier. The request does not include a review of any data discrepancies.

County believes that San Diego's increased cases are not due to the sectors impacted by moving into a more restrictive tier. County has interviewed cases to identify potential exposure settings and tracked community outbreaks. County has also developed a robust Test, Trace, and Treat, or T3, program to identify, contain, and stop of spread of COVID-19. In partnership with municipalities and the community, the County has developed the Safe Reopening Compliance Program to ensure compliance and enforcement when needed. The County also reports that they have a strong community and sector collaboration and communication structure.

Current data for San Diego County indicate that there continues to be higher levels of community transmission and metrics fall into line with current tier assignment.

## Determination

San Diego County's tier adjudication request is not approved and metrics accumulated for the 11/4/2020 tier assignment week remain in the Purple Tier.

Date of CDPH Determination: 11/08/2020

Other additional justification to be considered:
Please provide relevant qualitative/contextual elements for the States consideration

The County of San Diego has several qualitative/contextual elements for the State's consideration to stay in Tier 2/Red Tier.  They include:

1. San Diego's increased cases are not due to the sectors impacted by moving into a more restrictive tier.

  a. Interview of Cases to Identify Potential Exposure Settings

  b. Tracking of Community Outbreaks

2. The County of San Diego has developed a robust Test, Trace, and Treat, or T3, program to effectively identify, contain, and stop of spread of COVID-19.

3. In partnership with municipalities and the community, the County of San Diego has developed an effective Safe Reopening Compliance Program to ensure compliance and enforcement when needed.

4. The County of San Diego has a strong community and sector collaboration and communication structure.


1.  CASE ANALYSIS OF SECTORS IMPACTED BY MOVING TO THE MORE RESTRICTIVE TIER

Based on the case data for October, it is clear that San Diego's increased cases are not due to the sector closures impacted by moving into a more restrictive tier (See Chart #1).  The data shows minimal COVID-19 spread in these sectors:

• Restaurant/Bars:  7.4% of cases (715 of 9,646)

• Retail:  6.6% of cases (636 of 9,646)

• Places of Worship:  1.9% of cases (184 of 9,646)

• K-12 schools:  1.7% of cases (165 of 9,646)

• Gyms:  0.4% of cases (39 of 9,646)

Outbreak data also show these sectors make up a small percentage of the cases overall.  Of the 58,106 cases reported yesterday, 5.5% or 3,192 cases were associated with the confirmed community outbreaks. (See Chart #2).

Rather, the increase in cases are found in worksites (See Chart #3) and in 20-29-year-old population (See Chart #4).  Fortunately, this population has not had minimal impact on hospital capacity.  Current hospital capacity remains steady.  Over the previous 3 weeks, there have been between 25 and 30% of the total civilian hospital beds available.  During this same time-period, the availability of ICU beds within the civilian hospitals has ranged between 30% and 40%.  Both ICU and total hospital beds varies daily but remains steady.  Greater than 80% of our hospitals have more than 21 days on

hand of all Personal Protective Equipment (PPE).  In addition, the County has purchased hundreds of millions of medical grade and chemo appropriate gloves and have secured up to a $30M contract with HoneyWell for FDA and NIOSH approved N95 respirators that have > 95% FIT test passing rate with health care workers that were tested at multiple facilities.  The first 4-million respirators will be in our warehouse within the next 60 days.

Penalizing the impacted sectors for case increases is wrong, as these sectors continue to do the right things, while trying to weather the ongoing pandemic and the back and forth of re-openings.  For example, many local restaurants have invested in new costly technologies to improve ventilation and lighting, such as sanitizer stations, electrostatic disinfection units, plexi-screens, and upgraded HVAC filtration units.

Additionally, the closure of indoor restaurants, especially during the wintertime where outdoor dining is not optimal, will move individuals into homes and encourage gatherings, which is one of the high-risk areas for cases.  In general, closing indoor capability for these sectors contradicts the State's concept of the Blueprint for a Safer Economy, as these sectors continue to be among the hardest hit, causing closures and other devastating cuts.


2.  TEST, TRACE, AND TREAT (T3)

The County's TEST, TRACE, AND TREAT (T3) EFFORTS are effective mitigation intervention strategies to contain and stop the spread of COVID-19 (See Chart #5).

TEST

The T3 Testing Branch has worked in partnership with cities, faith-based organizations, schools, businesses, and community to establish over 60 testing sites throughout San Diego providing over 28,000 tests per week.  The County partnered with County Fire to provide testing in the vast rural backcountry of San Diego's 4,207 square miles.  The County worked with San Diego County Office of Education to support school reopening establishing robust test sites throughout the region as well as four dedicated sites for school personnel.  Strategies have included identifying hot spots of positivity rates for site placement, evaluating data to determine best types of sites (i.e., Walk Up, Drive Up, or Mobile single day test sites).  The County strategized to place test sites within 4th Quartile areas as well as utilizing community input with a health equity lens.  The County has also established a communications platform with over 1,400 Long Term Care Facilities and provides baseline as well as surveillance testing.

TRACE

The County has the infrastructure, processes, and workforce to reliably investigate, detect, and safely isolate new COVID-19 cases, as well as follow up with individuals who have come in contact with positive cases. Case investigation and contact tracing have been a pillar of communicable disease control in the County's Public Health

Department for decades. As of October 20, 2020, in total, the County has the capacity of 836 (495 case investigators and 341 contact tracers) staff members to meet case investigation and contact tracing needs, plus 120 administrative team staff and 52 outbreak investigators for a grand total of 1,008 staff members. The County continues to onboard additional contact tracers. Staffing needs continue to be adjusted and increased, given the trend of reported cases, and identified contacts. For data as of October 23, 2020, with the current staffing capacity, San Diego County has exceeded it targets of 90% for both case investigation and contact tracing over a 7-day average initiated within a 24-hour period at 96% and 95%, respectively.

• The average number of close contacts is two, with 82.1% being household members (for May 4- October 17, 2020).

• For data from October 20, 2020, the County made its first contact attempt for 95% of close contacts of new positive cases within 1 day, or 24 hours, of identification (an increase of .097% from September 23, 2020 (94%).

• In 3-days (72 hours), 97.4% of close contacts were attempted and 78.6% were completed (for May 4-October 20, 2020). For the rolling 7-day average (October 13-20, 2020), the numbers were 78.8% and 79.9%, respectively.

From a health equity perspective, it is critical that investigation and contact tracing efforts are appropriate to those communities experiencing greater burdens of COVID-19. The County has made concerted efforts to recruit and build a cadre of investigators and tracers to meet the immediate goal of addressing the pandemic and to build public health infrastructure that supports health equity, with the goal of mirroring the County's demographic population.

The County has established a pre-outbreak assessment team to assess rumors or outbreaks or clusters of cases in order to determine if they meet outbreak criteria. Businesses and schools have an online mechanism to report cases, which feeds into the County's Epidemiology Unit for quick follow up.  For the most recent week between October 25-31, the overall timeframe between the onset of illness to the completion of the case investigation was 6.4 days.

For the month of October, the overall average days between the onset of illness to the completion of the investigation was 6.8 days (including the average 3.6 days individuals typically take from symptom onset to specimen collection). This compares to 7.0 days for September and 10.1 days in August. These improvements as a result in improvements in lab turn around test times and the contacts made with cases (See Chart #6).  Further, improvements have been seen across all race and ethnicity groups (See Chart #7)

TREAT (includes Isolation)

San Diego County's Temporary Lodging Program has achieved a 94% rate of individuals successfully completing their isolation/quarantine period at the Public Health Hotel (out of 2011 total individuals). This has helped to reduce the spread in San Diego County and provided essential onsite nursing and behavioral health to ensure coordinated

care was experience by guests at the hotel. Additionally, 271 persons experiencing homelessness who had no previous shelter left the isolation hotel to a shelter or permanent supportive housing.  Between our Public Health Hotels and our partner hotels with Regional Task Force for the Homeless, we were able to safely isolate 1,195 individuals who had "high risk" factors according to the CDC.  The County's Isolation Support Nurse Help Line has connected with over 7,000 individuals who have tested positive and provided them with isolation support (which includes temporary lodging), clinical advice and referrals to essential services such as Income support, community services and basic needs like food and nutritional support.

The County's Public Health Nurses have provided clinical support on site to the City of San Diego's Operation Shelter to Home, which safely isolates over 1,000 individuals at any given time. With a peak census of nearly 1,350 individuals, the County has provided a range of services including shelter screening, conducting over 8,500 COVID while maintaining a positivity rate of just 0.02%, Behavioral Health treatment and support, and Self-Sufficiency Services which helps connect individuals to Cal-Fresh and Medi-Cal.

Given the housing crisis and inability for individuals to isolate, the County continues to offer PH Hotels and utilize trusted messengers from the community to engage and inform the community on these services, with 48% of those isolated living in the Health Equity Quartile.


3. SAN DIEGO'S SAFE REOPENING COMPLIANCE TEAM

To ensure compliance with the State and local Health Order, The County of San Diego established a regional compliance program known as the Safe Reopening Compliance Team.  Under this program, a regional call center and email complaint system was established, where the County coordinates with the 18 incorporated cities within the region to address complaints. As complaints are received, the compliance team coordinates with the various cities to disseminate and address complaints.

The program has received over 4,000 complaints since being established.  While the goal is compliance, focusing on education and engagement, enforcement has included issuance of 21 cease and desist orders and 7 shutdown orders.  When conducting field assessments, the team assesses for key indicators such as health screening requirements, sanitization, and social distancing.  Entities that are not compliant are provided guidance and corrective actions to ensure compliance is achieved.

The County program currently consists of 27 dedicated staff and is adding additional resources in November.  Additionally, local cities have their own staff that coordinate with the County compliance team.  Biweekly phone calls with each city are held at a minimum, with additional communication held routinely based on specific locations and concerns.

OUTBREAK ASSESSMENTS

In addition to responding to complaints, the County Compliance team conducts field assessments across the San Diego region of locations that have had community outbreaks, as well as pre-outbreak assessments. Standard assessments are conducted to deliver information to Public Health on field conditions to guide further engagement. Any corrective actions are also provided in the field. This information helps guide County policy decisions.

FOCUSED COMPLIANCE EFFORTS

The County of San Diego has worked to ensure compliance comprehensively with the Health Order, as well as taking a very focused approach to key areas. Noted below are examples of engagement with the restaurant industry, as well as with a local university following it's opening and outbreak.

RESTAURANT COMPLIANCE

Ensuring restaurants are compliant with the Health Order is a priority in our compliance efforts. For this reason, San Diego County has proactively conducted over 13,000 field inspections of restaurants to ensure they are following the key requirements to operate under the Health Order. Each inspection begins with a review of the restaurant's COVID-19 protocol, covering employee screening, sanitization, and social distancing among other areas. If any deficiencies are identified, corrections are directed by staff to achieve compliance. In addition, the County has regular outreach and education with the restaurant industry to communicate the evolving requirements of the Health Order to ensure they understand what's required to remain compliant. In instances where a complaint is received, an assessment is conducted to address any concerns.

The County of San Diego has also reassigned staff, quadrupling the number, interviewing food handlers who have been exposed to or are confirmed COVID-19 cases. Based on the strong partnership between the County and local food operators, many of these cases are self-reported by the restaurant as probable to County staff before the confirmation is received. A phone or field investigation is conducted in every situation, to evaluate and determine if the food facility must take additional precautions, including closing, to prevent the spread of COVID-19. To date, County staff has investigated over 3,500 food handlers and investigated over 400 clusters of cases. This proactive approach helps limit the spread of COVID-19 in a restaurant, reducing the risk of outbreaks.

INSTITUTIONS OF HIGHER EDUCATION

County of San Diego responded to a more focused concern when San Diego State University reopened this fall, resulting in an outbreak and surge in cases.  While the university responded by pausing most in person classes and issuing a stay at home order, the County of San Diego compliance team partnered with SDSU as well as the City of San Diego.  Compliance included monitoring by all three entities, education and engagement with students, and where appropriate enforcement action.  The County's compliance team conducted several field assessments of student housing, including fraternity and sorority houses, and apartment complexes, to conduct assessments ensuring they are following the established COVID protocol, where any deficiencies were identified, corrective actions were directed to achieve compliance.

While a partnership between SDSU and the County, including a comprehensive strategy, brought SDSU case numbers down, the compliance team was engaged again prior to the Halloween weekend when several parties / gatherings were planned. The County issued eight cease and desist orders on October 30, 2020, to locations planning events around SDSU to proactively curb gatherings.  This step, in addition to proactive monitoring and engagement by the County team, SDSU, and City of San Diego, resulted in a Halloween with relatively few concerns compared to prior years.

In general, the County has a designated lead for each Institution of Higher Education (IHE) and works directly with the student health or medical lead for each IHE.  This ensures timely information exchange related to cases, contacts, communication products, and testing. Each time a new case is identified, the IHE is notified.


4. COMMUNITY AND SECTOR COLLABORATION & COMMUNICATION

Since March 13, 2020, the Education and Outreach Branch has been virtually disseminating timely and accurate COVID-19 information to stakeholders across the San Diego County region. The Branch is made up of 9 Sectors and 12 subsectors (Business; Community & Faith-Based Organizations including Youth and Rural; Education including Early Care and Education, K-12, and Colleges & Universities; Government including City Managers & Unincorporated Areas, Bi-National Leaders, Legislators and Tribal Nations; Homeless/Shelters; Healthcare including Dental Providers, Physicians and Clinical Providers; Long-term Care and Residential Facilities; Military & Veterans; Older Adults and Disability Service Providers). The sector structure has successfully engaged and mobilized thousands of stakeholders per week through telebriefings, emails, websites, and presentations during critical times of the pandemic. Each sector is supported by sector-specific and medical subject-matter experts. Since March, the Branch has: conducted 407 sector telebriefings with a total of 46,641 views by community stakeholders, made 217 COVID-19 presentations to 7,148 participants, and distributed 646 eblasts to over 7,600 weekly recipients.

The County of San Diego contracts with seven organizations who employ 82 Community Health Workers (CHWs) speaking 19 languages, to develop and deliver culturally and linguistically appropriate education and outreach messaging to prevent and slow the spread of COVID-19.   The priority populations of Latinos/Latinx, African Americans, Asian Pacific Islanders and Refugee/Immigrants were identified for this effort based on data of those San Diego County residents most at risk of contracting COVID-19.  From the first month's reporting from contractors (September), CHWs conducted focused outreach to an estimated 37,895 residents through over 3,000 COVID-19 testing referrals, over 3,000 phone calls, over 36,000 recipients of emails, over 16,000 reached through direct messaging (Text, WhatsApp and Viber), and over 3,000 attendees at community engagement events (in person at essential services and virtually).  They also conducted universal outreach to the priority populations via social media, outdoor ads, videos and printed flyers with a reach of approximately 217,546.

In closing, a solution to prevent the back and forth of business reopening is to move some of the indoor activity into the Tier 1/Purple Tier, such as 25% of restaurant indoor operations.

EXHIBIT 7

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 12/16/2020       TIME: 02:57:00 PM       DEPT: C-73

JUDICIAL OFFICER PRESIDING: Joel R. Wohlfeil
CLERK: Andrea Taylor
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00038194-CU-CR-CTL**   CASE INIT.DATE: 10/21/2020
CASE TITLE: **Midway Venture LLC vs County of San Diego [IMAGED]**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Civil Rights

---

**APPEARANCES**

---

The Court, having taken the above-entitled matter under submission on 12/16/2020 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

The Order to Show Cause (ROA # 1, 36, 38, 40, 49) for a Preliminary injunction by Plaintiffs MIDWAY VENTURE LLC dba PACERS SHOWGIRLS / PACERS SHOWGIRLS INTERNATIONAL, PETER BALOV, F - 12 ENTERTAINMENT GROUP INC. dba CHEETAHS, and RICH BUONANTONY ("Plaintiffs") against Defendants COUNTY OF SAN DIEGO, WILMA J. WOOTEN, in her official capacity as Public Health Officer, County of San Diego, GOVERNOR GAVIN NEWSOM, in his official capacity as the Governor of the State of California, and the CALIFORNIA DEPARTMENT OF PUBLIC HEALTH ("Defendants"), is GRANTED.

Pending the trial of this case, Defendants, and each of them and their respective agents and assigns, and any governmental entity or law enforcement officer, are hereby ENJOINED from enforcing the provisions of the cease and desist order, or any related orders including the State's Regional Stay Home Order, that prevent 1) Plaintiffs from providing live adult entertainment; and 2) San Diego County businesses with restaurant service, such as Plaintiffs' establishments, from continuing to operate their respective businesses, subject to protocols that are no greater than is essential to further Defendants' response to control the spread of COVID.

The Request (ROA # 29 at footnote 10) of Defendants Gavin Newsom, in his official capacity as Governor of California, and the California Department of Public Health (unless specified otherwise, collectively referred to as "the State") for judicial notice of the Watt Declaration, which was executed and filed on October 16, 2020, in <u>Calvary Chapel of Ukiah v. Newsom</u>, No.42:20-cv-01431-1CJMDMC (E. D. Cal. Oct. 16, 2020), as ECF No. 39, is GRANTED IN PART and DENIED IN PART. The Court takes judicial notice of the date on which the Watt Declaration was filed with the Court; otherwise, the Request is DENIED.

The evidentiary objections (ROA # 51) of Defendants COUNTY OF SAN DIEGO and WILMA J. WOOTEN (unless specified otherwise, collectively referred to as "the County") are OVERRULED IN

---

CASE TITLE: Midway Venture LLC vs County of San Diego [IMAGED]          CASE NO: **37-2020-00038194-CU-CR-CTL**

PART and SUSTAINED IN PART.  The objections are OVERRULED except as follows:  Nos. 3 – 5 are SUSTAINED.

Plaintiffs' evidentiary objections (ROA # 57) to the declaration of Brent Panas are OVERRULED; however, Panas' representation, at paragraph 5 ("On November 30, 2020, seventeen new community COVID-19 outbreaks were confirmed.  For the seven-day period from November 24 through November 30, 2020, 81 community outbreaks were confirmed.  The number of community outbreaks the County is experiencing and documenting remains far above the trigger of seven or more outbreaks in a seven-day period.") is vague and marginally relevant, if at all, to the limited issue before the Court; namely, whether Plaintiffs providing live adult entertainment **and** San Diego County businesses with restaurant service, such as Plaintiffs' establishments, subject to protocols, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.

Plaintiffs' evidentiary objections (ROA # 58) to the declaration of Dr. James Watt are OVERRULED IN PART and SUSTAINED IN PART.  Plaintiffs' general objection to Dr. Watt's declaration (attached as Exh. "F" to the declaration of Attorney Li – ROA # 55) is well taken.  The State appears to have caused Dr. Watt's declaration to be filed on November 30, 2020, in <u>Ghost Golf, Inc. v. Newsom</u>, No. 20CECG03170 (Fresno County Sup. Ct.).  The Court will nonetheless receive the evidence as a proffer of proof from counsel of the testimony of Dr. Watt if he were called and sworn to testify as a witness in this case.  The balance of Plaintiffs' objections are, except as noted, SUSTAINED.  Nos. 1, 4, 7, 8 and 9 are OVERRULED.

Plaintiffs' objection to the declaration of Chelsea Kuhn, filed by the State on December 15, 2020, is SUSTAINED.

The County's Request for judicial notice of the Court's November 23, 2020 Order (ROA # 50) in the San Diego County Superior Court case entitled <u>640 Tenth LP vs. Newsom</u>, case no. 37-2020-00041316-CU-MC-CTL, is GRANTED.

Plaintiffs operate Pacers and Cheetahs, adult entertainment establishments within the meaning of San Diego Municipal Code ("SDMC") section 33.3601 et seq. under Nude Entertainment Business Permit number 2010022137 issued by the Chief of the San Diego Police Department.  Complaint at par's 1 – 4.  Closed for months after the pandemic arose, deprived of direction from Defendants, and left to guess on how to re-open their establishments, Plaintiffs submitted a plan to the County which included the following restrictions:

"- Stages to be located on two (2) foot platforms, fifteen (15) feet from any tables.

- Stages to be roped off with signs strictly advising patrons not to pass within the fifteen-foot buffer.

- Adult entertainers to perform one artist at a time per stage.

- All stage equipment to be sanitized after a performance.

- All performers to wear mask coverings while performing.

- The announcer and disc jockey ("DJ") to be located fifteen (15) feet from any tables, roped off and designated for one person at a time.

CASE TITLE: Midway Venture LLC vs County of San Diego [IMAGED]     CASE NO: **37-2020-00038194-CU-CR-CTL**

- Audio stage to be sanitized and cleaned after every daily use.

- The announcer and DJ to wear a mask covering.

- The announcer and DJ to issue regular reminders to patrons that they are not to approach performers and they are to remain seated at their tables." Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

Without objection from the County, Plaintiffs re-opened their establishments and provided indoor entertainment for approximately five weeks before receipt of Dr. Wooten's cease and desist letter. Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

Facing financial ruin, Plaintiffs have filed this action to contest Dr. Wooten's cease and desist letter, or any related orders, which prevent them from continuing to operate their respective businesses, subject to protocols. Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

On November 6, 2020, the Court, after consideration of the briefs, evidence and arguments of counsel, issued a temporary restraining order ("TRO") enjoining Defendants from enforcing the provisions of the cease and desist orders, or any related orders, to prevent Plaintiffs from being allowed to provide live adult entertainment, pending an order to show cause ("OSC") re the issuance of a preliminary injunction. ROA # 36, 38, 40, 49.

Since re-opening, Plaintiffs have "implemented and followed all provisions of the State of California Industry Guidance for restaurants, wineries and bars, including, but not limited to, individual control measures and screening, cleaning and disinfecting protocols, and physical distancing." Declarations of Trever Shamshoian (ROA # 44) and Rich Buonantony (# 45).

"No patron, staff member, or adult entertainer has been exposed to COVID-19" and "no COVID-19 cases" have been traced back to Pacers and Cheetahs." Plaintiffs have provided "a very safe place for live adult entertainment" and followed "both the letter and spirit of the TRO." Declarations of Trever Shamshoian (ROA # 44) and Rich Buonantony (# 45).

The testimony of Shamshoian (ROA # 44) and Buonantony (# 45) are consistent with the opinion testimony of Dr. Lawrence Mayer who states, at paragraph 3 of his declaration (ROA # 41):

"I have been asked to opine on the issue of whether a restaurant would increase the risk to its patrons or employees if a dancer performing on a stage were present if the dancer is 15 feet away from all patrons and suitably masked. There is no scientific evidence of increased risk to the patrons if dancing is allowed at a restaurant under those conditions."

Defendants have not submitted any evidence to refute the testimony of Shamshoian (ROA # 44), Buonantony (# 45) and Dr. Mayer (ROA # 41). The Court infers that, based on the declaration of Panas, the County possesses contact tracing data and has the power to produce such evidence to refute Plaintiffs' assertions that Plaintiffs providing live adult entertainment and San Diego County businesses with restaurant service, such as Plaintiffs' establishments, subject to protocols, do **not** present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at

CASE TITLE: Midway Venture LLC vs County of San Diego [IMAGED]          CASE NO: **37-2020-00038194-CU-CR-CTL**

Home Order - to the spread of COVID in San Diego County.  Since the County could have produced "stronger evidence," the Court discounts the County's "weaker evidence."  CACI 203.

Accordingly, the Court finds that Plaintiffs have been devoid of COVID, have done nothing to contribute to the spread of COVID, and have honored their representations to Dr. Joel Day and the County.

In their oppositions, Defendants note that, since the Court issued the TRO, Defendants have "**changed the State's treatment of live performances held at restaurants, by authorizing such performances under the same conditions under which restaurants may operate.**" (emphasis added by the Court) Defendants assert that "This motion is therefore moot."  (emphasis added by the Court) ROA # 54 at pages 10 – 11; ROA # 50 at page 2.

In Roman Catholic Diocese of Brooklyn v. Cuomo (November 25, 2020) - S. Ct. -; 2020 WL 6948354; 20 Cal. Daily Op. Serv. 11,976, Petitioners "filed § 1983 actions alleging that Governor's emergency Executive Order imposing occupancy restrictions on houses of worship during COVID-19 pandemic violated Free Exercise Clause." (Likewise, Plaintiffs' claims include three counts for Violation of 42 U. S. C. § 1983.)  The Court enjoined Governor Cuomo from enforcing the Executive Order imposing restrictions on houses of worship.

The Court stated, in pertinent part:

"The dissenting opinions argue that we should withhold relief because the relevant circumstances have now changed.  After the applicants asked this Court for relief, the Governor reclassified the areas in question from orange to yellow, and this change means that the applicants may hold services at 50% of their maximum occupancy.  The dissents would deny relief at this time but allow the Diocese and Agudath Israel to renew their requests if this recent reclassification is reversed.

There is no justification for that proposed course of action.  **It is clear that this matter is not moot**.  See Federal Election Comm'n v. Wisconsin Right to Life, Inc. 551 U. S. 449, 462, 127 S. Ct. 2652, 168 L. Ed.2d 329 (2007); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc. 528 U. S. 167, 189, 120 S. Ct. 693, 145 L. Ed.2d 610 (2000).  **And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange**. See, e.g., Susan B. Anthony List v. Driehaus 573 U. S. 149, 158, 134 S. Ct. 2334, 189 L. Ed.2d 246 (2014).  **The Governor regularly changes the classification of particular areas without prior notice.**  If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained.  At most Catholic churches, Mass is celebrated daily, and "Orthodox Jews pray in [Agudath Israel's] synagogues every day."  Application in No. 20A90, at 4.  Moreover, if reclassification occurs late in a week, as has happened in the past, there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes.  Thirteen days have gone by since the Diocese filed its application, and Agudath Israel's application was filed over a week ago.  While we could presumably act more swiftly in the future, there is no guarantee that we could provide relief before another weekend passes.  **The applicants have made the showing needed to obtain relief, and there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification.**" (emphasis added by the Court)

This record reflects that Defendants' latest "change" is consistent Plaintiffs' initial assertion that Defendants' "orders have undergone endless and bewildering changes."  ROA # 13 at page 9.

Like the Supreme Court in Roman Catholic Diocese of Brooklyn v. Cuomo, the Court finds that

CASE TITLE: Midway Venture LLC vs County of San          CASE NO: **37-2020-00038194-CU-CR-CTL**
Diego [IMAGED]

Defendants' latest change does not render Plaintiffs' Application moot.

To avoid any confusion, the Court is deeply empathetic to the County and Dr. Wooten's dilemma in balancing their local responsibilities, based on the data in San Diego County, while subject to the State's threat "to withhold funding from counties that do not adhere to its guidance or enforce its orders."  ROA # 50 at pages 3 – 4.

As Brent Panas, Chief of the County's COVID-19 Safe Reopening Compliance Team, declares "As the Governor and other State officials have made clear, local governments (including the County of San Diego) do not have authority to relax the State's COVID-19 public health restrictions and orders. While counties can adopt stricter requirements in their public health orders, they cannot affirmatively permit activities or business operations that violate the State's guidelines and orders."  ROA # 52 at paragraph 6.

Nobody is in a better, more informed position to manage the local health conditions than Dr. Wooten. With full knowledge of current data, Dr. Wooten has purportedly represented that "penalizing sectors like restaurants and gyms for the case increase is wrong.  'Closure of indoor restaurants during wintertime will move people into homes and encourage high risk gatherings. Closing indoor capability contradicts the "Blueprint for a Safer Economy". Further, the County has taken steps to complete outbreak assessments, enforce compliance, and to educate and engage the community.'"  The Court's November 23, 2020 Order (ROA # 50), at page 7, in the San Diego County Superior Court case entitled 640 Tenth LP vs. Newsom, case no. 37-2020-00041316-CU-MC-CTL.

The Court infers from Dr. Wooten's purported representations that she does not consider businesses with restaurant service, such as Plaintiffs' establishments, to be responsible for the increase in the County's COVID cases.  ROA # 50 at pages 5 – 6; ROA # 52 at paragraph 4.  Given every opportunity, the County has provided the Court with no evidence that San Diego County businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.  ROA # 52 at paragraph 7.

The obvious question, from the Court's perspective, is, in the absence of evidence, why is the State's Regional Stay at Home Order limiting San Diego County restaurant businesses "to take-out, pick-up, or delivery" rational?  ROA # 54 at pages 9 – 10.

In support of their position, the State attached the Declaration of Dr. James Watt, MD, MPH, in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, executed and filed on November 30, 2020, in Ghost Golf, Inc. v. Newsom, No. 20CECG03170 (Fresno County Sup. Ct.).  ROA # 55, Exh. F.

The Court does not question Dr. Watt's qualifications, as Chief of the Division of Communicable Disease Control of the Center for Infectious Diseases at the California Department of Public Health ("CDPH"), to form and express opinions on the subject of "COVID-19, short for coronavirus disease 2019." Paragraphs 2 – 15 of Dr. Watt's declaration.  Dr. Watt's declaration provides a general overview of COVID-19 in California but says nothing to support restrictions, in addition to existing protocols, in San Diego County.  Indeed, part of Dr. Watt's opinion testimony more corroborates than refutes the testimony of Shamshoian (ROA # 44), Buonantony (# 45) and Dr. Mayer (ROA # 41).  See paragraphs 47 and 48 of Dr. Watt's declaration.  Again, given every opportunity, the State has provided the Court with no evidence that San Diego County businesses with restaurant service, such as Plaintiffs' establishments,

CASE TITLE: Midway Venture LLC vs County of San Diego [IMAGED]                     CASE NO: **37-2020-00038194-CU-CR-CTL**

who've implemented protocols as directed by the County, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.

In the absence of such evidence, Dr. Wooten's representation that "penalizing sectors like restaurants and gyms for the case increase is wrong" resonates with the Court.

The State argues that "When the defendant is a public official or agency, the court also considers the public interest. (Tahoe Keys Property Owners' Assn. v. State Water Resources Control Board (1994) 23 Cal. App. 4th 1459, 1472-73.)" ROA # 54 at page 10.

In Roman Catholic Diocese of Brooklyn v. Cuomo, the Court stated:

"*Public interest*. Finally, it has not been shown that granting the applications will harm the public. As noted, the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease. And the State has not shown that public health would be imperiled if less restrictive measures were imposed.

Members of this Court are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area. **But even in a pandemic, the Constitution cannot be put away and forgotten.** The restrictions at issue here, by effectively barring many from attending religious services, strike at the very heart of the First Amendment's guarantee of religious liberty. Before allowing this to occur, we have a duty to conduct a serious examination of the need for such a drastic measure." (emphasis added by the Court)

In his concurring opinion, Justice Gorsuch stated:

"Government is not free to disregard the First Amendment in times of crisis. At a minimum, that Amendment prohibits government officials from treating religious exercises worse than comparable secular activities, unless they are pursuing a compelling interest and using the least restrictive means available. See Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U. S. 520, 546, 113 S. Ct. 2217, 124 L. Ed.2d 472 (1993). Yet recently, during the COVID pandemic, certain States seem to have ignored these long-settled principles.

...

At the same time, the Governor has chosen to impose no capacity restrictions on certain businesses he considers "essential." And it turns out the businesses the Governor considers essential include hardware stores, acupuncturists, and liquor stores. Bicycle repair shops, certain signage companies, accountants, lawyers, and insurance agents are all essential too. So, at least according to the Governor, it may be unsafe to go to church, but it is always fine to pick up another bottle of wine, shop for a new bike, or spend the afternoon exploring your distal points and meridians. Who knew public health would so perfectly align with secular convenience?"

True, the current case is not a Church case but, with Plaintiffs, the nature of their entertainment is entitled to First Amendment protection ("if only within the outer ambit of the First Amendment's protection.") City of Erie v. Pap's A.M. (2000) 529 U. S. 277, 289; Krontz v. City of San Diego (2006) 136 Cal. App. 4th 1126, 1132. Further, since the State and County's purpose in enacting the restrictions appear to be unrelated to suppressing Plaintiffs' expression, the restrictions "need only satisfy the "less

CASE TITLE: Midway Venture LLC vs County of San Diego [IMAGED]          CASE NO: **37-2020-00038194-CU-CR-CTL**

stringent," intermediate O'Brien standard.  E.g., Johnson, supra, at 403, 109 S. Ct. 2533."  The Court's application of a more stringent test in ruling on Plaintiffs' Application for a Temporary Restraining Order is vacated.  Ironically, the "restrictions such as the no-touch and six-foot rules" at issue in the Krontz case are very much not at issue in this case; to wit, see Plaintiffs' self-imposed restrictions to satisfy the County's protocols ("- Stages to be located on two (2) foot platforms, fifteen (15) feet from any tables. - Stages to be roped off with signs strictly advising patrons not to pass within the fifteen-foot buffer.") Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

Businesses with restaurant service, such as Plaintiffs' establishments, serve the public interest.  These business establishments provide sustenance to and enliven the spirits of the community, while providing employers and employees with means to put food on the table and secure shelter, clothing, medical care, education and, of course, peace of mind for they and their families.

The State relies upon Jacobson v. Massachusetts (1905) 197 U. S. 11, 27 to assert that the "Challenged Orders Are a Permissible Exercise of the State's Emergency Powers."  ROA # 54 at page 15.  However, as Justice Gorsuch noted in his concurring opinion, "But Jacobson hardly supports cutting the Constitution loose during a pandemic.  **That decision involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction.**"  (emphasis added by the Court)

The State also asserts that "Restrictions on Live Entertainment Are Content-Neutral Time, Place, Manner Regulations that Survive Intermediate Scrutiny."  "A time, place, and manner restriction on speech is valid if it: (a) is content neutral, (b) is narrowly tailored to serve a significant government interest, and (c) leaves open ample alternative channels for communication." (Klein v. San Diego County (9th Cir. 2006) 463 F. 3d 1029, 1034.)"  ROA # 54 at page 15.  However, shuttering Plaintiffs' establishments except "to take-out, pick-up, or delivery," in the absence of evidence to support the restrictions, is neither "neutral" nor "narrow."  Defendants' characterization of Plaintiffs' establishments as restaurants or as non-essential does not dilute Plaintiffs' right to first amendment protection.  ROA # 56 at page 8.  Characterization of services as non-essential may be politically expedient but, in too many instances, is practically inconsistent and legally suspect; for example, houses of worship.  The Court also questions whether "take-out, pick-up, or delivery" is consistent with the patrons' primary purpose in frequenting Pacers and Cheetahs, and therefore whether such restriction "leaves open ample alternative channels for communication" with the State and County.

In response to the Court's initial observation that "the County appears to have loosely, if not arbitrarily, enforced this prohibition" (ROA # 36 at page 4), the County asserts that "Plaintiffs have presented no evidence of selective enforcement of the Public Health Order by County Defendants, much less evidence of selective enforcement "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." [Murgia, supra, 15 Cal. 3d at 299, quoting Oyler, supra, 368 U. S. at 456.]"  ROA # 50 at page 15.

In its opposition (ROA # 50), the County further asserts, at page 10:

"Contrary to Plaintiffs' contentions, County Defendants have in no way singled out Plaintiffs' establishments, or live adult entertainment in general, for enforcement activity under the Public Health Order.  The 125 cease-and-desist letters, and seven Immediate Closure Orders, that County Defendants have issued through November 30, 2020, involved a wide array of business and other activities, including gyms, fitness centers, yoga studios, bars, restaurants, spas, fraternities and sororities, religious

CASE TITLE: Midway Venture LLC vs County of San          CASE NO: **37-2020-00038194-CU-CR-CTL**
Diego [IMAGED]

entities, and entertainment centers. [Panas decl., at ¶¶ 13 - 14, and Exhs. 4 - 5 thereto.] And with respect to live entertainment, Plaintiffs' businesses were not the only establishments that received a cease-and-desist letter from the County concerning live entertainment taking place in violation of the then- applicable State COVID-19 restrictions and the Public Health Order. [Panas decl., at ¶ 14.]"

The Court cannot find, based on this record, that the County has arbitrarily enforced the prohibition of live entertainment indoors at bars and restaurants; however, the County's issuance of "cease-and-desist letters, and Immediate Closure Orders, to "a wide array of business and other activities, including gyms, fitness centers, yoga studios, bars, restaurants, spas, fraternities and sororities, religious entities, and entertainment centers" does little, if anything, to demonstrate any nexus between businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, **and** the spread of COVID.

Defendants rely upon the State's Regional Stay Home Order.  ROA # 52 at par. 7; ROA # 55, Exh. "D." Upon review, the Court notes that the State has created a series of Regions, each of which consists of several counties.  San Diego County is one of eleven counties (Imperial, Inyo, Los Angeles, Mono, Orange, Riverside, San Bernardino, San Diego, San Luis Obispo, Santa Barbara, Ventura) in the Southern California Region.  The State apparently measures the "ICU bed capacity" in each Region and imposes restrictions to "gatherings of any size, closes operations except for critical infrastructure and retail, and requires 100% masking and physical distancing."

The Court questions whether there is a rational nexus between the percentage of ICU bed capacity throughout the Southern California Region **and** Plaintiffs providing live adult entertainment and businesses with restaurant service, such as Plaintiffs' establishments, in San Diego County.  Defendants have presented no evidence that businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, have impacted ICU bed capacity throughout the Southern California Region (much less in San Diego County).

In <u>Jamison v. department of Transportation</u> (2016) 4 Cal. App. 5th 356, 361, 362, the Court stated:

"'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and non-issuance of the injunction. [Citations.]' (<u>Common Cause v. Board of Supervisors</u> (1989) 49 Cal. 3d 432, 441, 442.)  'The trial court's determination must be guided by a "mix" of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.]' (<u>Butt v. State of California</u> (1992) 4 Cal. 4th 668, 678.) However, '[a] trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.' (<u>Ibid</u>.)"

In <u>Smith v. Adventist Health System / West</u> (2010) 182 Cal. App. 4th 729, 749, the Court stated:

"A superior court must evaluate two interrelated factors when ruling on a request for a preliminary injunction: (1) the likelihood that the plaintiff will prevail on the merits at trial and (2) the interim harm that the plaintiff would be likely to sustain if the injunction were denied as compared to the harm the defendant would be likely to suffer if the preliminary injunction were issued. (<u>Cohen v. Board of Supervisors</u>, supra, 40 Cal. 3d at p. 286.)  Weighing these factors lies within the broad discretion of the superior court.  (<u>Ibid</u>.; see pt. VI., post, for discussion of <u>Butt v. State of California</u> (1992) 4 Cal. 4th 668.)

CASE TITLE: Midway Venture LLC vs County of San          CASE NO: **37-2020-00038194-CU-CR-CTL**
Diego [IMAGED]

Plaintiffs have made an adequate showing that they have exhausted their capital trying to comply with Defendants' "endless and bewildering" orders, have sustained significant, if not draconian, losses, and are fearful that their businesses may be closed permanently if Defendants' latest orders are not enjoined.  ROA #'s 13 – 17.  The Court finds that Plaintiffs' evidence and arguments is credible.

Defendants, on the other hand, have provided the Court with no evidence that Plaintiffs providing live adult entertainment and San Diego County businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.

Further, Defendants have presented no evidence that Plaintiffs providing live adult entertainment and San Diego County businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, have impacted ICU bed capacity throughout the Southern California Region (much less in San Diego County).

The Court finds that, based on this record, 1) the harm to Plaintiffs if the preliminary injunction is denied is greater than the harm to Defendants if the preliminary is granted; and 2) it is likely that Plaintiffs will prevail on the merits of one or more of their claims.

Pending the trial of this case, Defendants, and each of them and their respective agents and assigns, and any governmental entity or law enforcement officer, are hereby ENJOINED from enforcing the provisions of the cease and desist order, or any related orders including the State's Regional Stay Home Order, that prevent 1) Plaintiffs from providing live adult entertainment; and 2) San Diego County businesses with restaurant service, such as Plaintiffs' establishments, from continuing to operate their respective businesses, subject to protocols that are no greater than is essential to further Defendants' response to control the spread of COVID,

The Court emphasizes that the reach of the preliminary injunction is limited to 1) Plaintiffs providing live adult entertainment; and 2) San Diego County businesses with restaurant service, such as Plaintiffs' establishments, providing restaurant service, subject to protocols that are no greater than is essential to further Defendants' response to control the spread of COVID.

This order becomes effective immediately.

*Joel R. Wohlfeil*

_____

Judge Joel R. Wohlfeil

EXHIBIT 8



# County of San Diego

Atos Jiu Jitsu
4810 Mercury Street
San Diego, CA 92111

Re:   CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance.  *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at 4810 Mercury Street, San Diego, CA 92111 in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders. Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten, M.D., M.P.H
Public Health Officer
County of San Diego

Date: 12/8/2020            By: _____

Brent Panas
Safe Reopening Compliance Team

cc:
    Wilma J. Wooten, M.D., M.P.H.



## County of San Diego

10th Planet Jiu Jitsu
6008 Mission Gorge Rd.
SAN DIEGO, CA 92120-4000

Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states gyms and fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at 6008 Mission Gorge Rd. SAN DIEGO, CA 92120 in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business. However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with.  If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten,
M.D., M.P.H Public
Health Officer
County of San Diego

Date: 12/15/2020                    By:

Brent Panas
Safe Reopening Compliance Team

cc:
        Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

10th Planet Spring Valley
2705 Via Orange Way
Spring Valley, CA 91978

Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states gyms and fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at 2705 Via Orange Way, Spring Valley, CA 91978 in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business. However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders. Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten,
M.D., M.P.H Public
Health Officer
County of San Diego

Date: 11/30/2020                    By:

Brent Panas
Safe Reopening Compliance Team

cc:
       Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

San Diego Strength and Wellness Center
861 Harold Pl. Suite 209-210
Chula Vista, Ca. 91914


Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states gyms and fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at: 861 Harold Pl. Suite 209-210, Chula Vista, Ca. 91914, in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with.  If you do not comply, we will take actions necessary to enforce the Orders. Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.


Wilma J. Wooten,
M.D., M.P.H Public
Health Officer
County of San Diego

Date: 12/03/2020

By: _____

Brent Panas
Safe Reopening Compliance Team


cc:
    Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

The Boxing Club
491 15th St
San Diego CA 92101

Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states gyms and fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at 491 15th St San Diego CA 92101 in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business. However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders. Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten,
M.D., M.P.H Public
Health Officer
County of San Diego

Date: 11/25/2020                    By:

Brent Panas
Safe Reopening Compliance Team

cc:
     Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

The Boxing Club Sport & Fitness
8623 Spectrum Center Blvd
San Diego CA 92123

Re:   CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states gyms and fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at 8623 Spectrum Center Blvd San Diego CA 92123 in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business. However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders. Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten, M.D., M.P.H
Public Health Officer
County of San Diego

Date: 11/18/2020          By: ~~Brent Panas~~
                          Brent Panas
                          ~~Safe Reopening Compliance~~ Team

cc:
     Wilma J. Wooten, M.D., M.P.H.

**SAN DIEGO POLICE DEPARTMENT**
**NOTICE TO APPEAR**

☐ MISDEMEANOR    DEFENDANT'S COPY

☐ Traffic    ☐ Nontraffic

Date of Violation ___ Time ___ Day of Week ___ Case No.
AM PM   S M T W T F S

Name (First, Middle, Last) ___   ☐ Owner's Responsibility (Veh. Code, § 40001)

Address ___

City ___ State ___ ZIP Code ___

Driver Lic. No. ___ State ___ Class ___ Commercial ☐ Yes ☐ No   Age ___ Birth Date ___

Sex ___ Hair ___ Eyes ___ Height ___ Weight ___ Race ___   ☐ Const. Zone ☐ School Zone

Veh. Lic. No. or VIN ___ State ___

Yr. of Veh. ___ Make ___ Model ___ Body Style ___ Color ___   ☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(b))

Evidence of Financial Responsibility ___   ☐ HAZARDOUS MATERIAL (Veh. Code, § 353)

Registered Owner or Lessee ___   ☐ Same as Driver

Address ___

City ___ State ___ ZIP Code ___   ☐ Same as Driver

Correctable Violation (Veh. Code, § 40610)

| Yes | No | Code and Section | Description | ☐ Booking Required | Misdemeanor or Infraction (Circle) |
|---|---|---|---|---|---|
| ☐ | ☐ | | | | M I |
| ☐ | ☐ | | | | M I |
| ☐ | ☐ | | | | M I |
| ☐ | ☐ | | | | M I |

Speed Approx. ___ P.F./Max Spd. ___ Veh. Lmt. ___ Safe ___ Radar ___

COMMENTS: (Weather, Road & Traffic Conditions)
CLR · CLDY   FOG   RAIN   DRY: SLIPPERY   HVY. MED. LIGHT   ☐ COLLISION

Location of Violation(s) ___

☐ CITY OF SAN DIEGO, CA    ☐ OTHER

☐ Violations not committed in my presence, declared on information and belief.
I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

___ Arresting or Citing Officer   I.D. No. ___ Command/Shift ___ Beat ___

Date ___ Name of Arresting Officer, if different from Citing Officer   I.D. No. ___ Command/Shift ___ Beat ___

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X Signature ___

WHEN: ON OR BEFORE THIS DATE: ___ TIME: ___ ☐ AM ☐ PM
WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE
WHERE:

☐ JUVENILE COURT, DEPT. 11
2901 MEADOWLARK DRIVE
SAN DIEGO, CA 92123   (858) 634-1600

☐ MISDEMEANOR ARRAIGNMENT DEPT.
220 W. BROADWAY
SAN DIEGO, CA 92101   (619) 450-5400

☐ SAN DIEGO TRAFFIC COURT
8950 CLAIREMONT MESA BOULEVARD
SAN DIEGO, CA 92123   (858) 634-1800
NIGHT COURT-CONTACT COURT FOR INFO

☐ SOUTH BAY COURT
500 3RD AVENUE
CHULA VISTA, CA 91910   (619) 746-6200
NIGHT COURT-CONTACT COURT FOR INFO

☐ NORTH COUNTY REGIONAL CENTER
325 S. MELROSE DRIVE, SUITE 350
VISTA, CA 92081 (760) 201-8900 INFORMATION

☐ EAST COUNTY REGIONAL CENTER
250 EAST MAIN STREET
EL CAJON, CA 92020 (619) 456-4100 INFORMATION

**Additional information is available at www.sdcourt.ca.gov**

Notice to Appear form approved by the Judicial Council of California
PD-177 (4/15) PNSPS-42 (Veh. Code, §§ 40500(b), 40513(b), 40622, 40600, Pen. Code, § 853.9)

SEE REVERSE
TR-130

**SAN DIEGO POLICE DEPARTMENT**
**NOTICE TO APPEAR**

☑ MISDEMEANOR   DEFENDANT'S COPY
☐ Traffic   ☐ Nontraffic

| Date of Violation | Time | ☐ AM ☐ PM | Day of Week S M T W Th F S | Case No. |
|---|---|---|---|---|

| Name (First, Middle, Last) | | ☐ Owner's Responsibility (Veh. Code, § 40001) |
|---|---|---|

Address

| City | State | ZIP Code |
|---|---|---|

| Driver Lic. No. | State | Class | Commercial ☐ Yes ☐ No | Age | Birth Date |
|---|---|---|---|---|---|

| Sex | Hair | Eyes | Height | Weight | Race | ☐ Const. Zone | ☐ School Zone |
|---|---|---|---|---|---|---|---|

| Veh. Lic. No. or VIN | State | ☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(b)) |
|---|---|---|

| Yr. of Veh. | Make | Model | Body Style | Color | ☐ HAZARDOUS MATERIAL (Veh. Code, § 353) |
|---|---|---|---|---|---|

Evidence of Financial Responsibility

| Registered Owner or Lessee | ☐ Same as Driver |
|---|---|

| Address | ☐ Same as Driver |
|---|---|

| City | State | ZIP Code |
|---|---|---|

| Correctable Violation (Veh. Code, § 40610) | ☐ Booking Required | Misdemeanor or Infraction (Circle) |
|---|---|---|

| Yes | No | Code and Section | Description | | |
|---|---|---|---|---|---|
| ☐ | ☑ | | | M | I |
| ☐ | ☐ | | | M | I |
| ☐ | ☐ | | | M | I |

| Speed Approx. | P.F./Max Spd. | Veh. Lmt. | Safe | Radar | N |
|---|---|---|---|---|---|

COMMENTS: (Weather, Road & Traffic Conditions)   ☐ COLLISION
CLR  CLDY  FOG  RAIN  DRY  SLIPPERY  HVY.  MED.  LIGHT

| W | | E |
| S |

Location of Violation
at

☐ CITY OF SAN DIEGO, CA   ☐ OTHER

☐ Violations not committed in my presence, declared on information and belief.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| Arresting or Citing Officer | I.D. No. | Command/Shift | Beat |
|---|---|---|---|

| Date | Name of Arresting Officer, if different from Citing Officer | I.D. No. | Command/Shift | Beat |
|---|---|---|---|---|

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.

X Signature

WHEN: ON OR BEFORE THIS DATE              TIME:           ☐ AM ☐ PM
WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE
WHERE:

| ☐ JUVENILE COURT, DEPT. 11 2901 MEADOWLARK DRIVE SAN DIEGO, CA 92123  (858) 634-1600 | ☐ MISDEMEANOR ARRAIGNMENT DEPT. 220 W. BROADWAY SAN DIEGO, CA 92101  (619) 450-5400 |
|---|---|
| ☐ SAN DIEGO TRAFFIC COURT 8950 CLAIREMONT MESA BOULEVARD SAN DIEGO, CA 92123  (858) 634-1800 NIGHT COURT-CONTACT COURT FOR INFO | ☐ SOUTH BAY COURT, 500 3RD AVENUE CHULA VISTA, CA 91910  (619) 746-6200 NIGHT COURT-CONTACT COURT FOR INFO |
| ☐ NORTH COUNTY REGIONAL CENTER 325 S. MELROSE DRIVE, SUITE 350 VISTA, CA 92081 (760) 201-8500 INFORMATION | ☐ EAST COUNTY REGIONAL CENTER 250 EAST MAIN STREET EL CAJON, CA 92020 (619) 456-4100 INFORMATION |

Additional information is available at www.sdcourt.ca.gov

Notice to Appear form approved by the Judicial Council of California.
PD-177 (4/16) PKPS-42  (Veh. Code, §§ 40500(b), 40513(b), 40522, 40600; Pen. Code, § 853.9)   SEE REVERSE   TR-130



# County of San Diego

Self Made Training Facility
4030 Sports Arena Blvd
San Diego, CA 92110
Matt Pallardy

Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, Fitness Facilities may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Fitness Facilities,* published by the California Department of Public Health and CalOSHA, states Fitness Facilities may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations and no face coverings by patrons and employees is occurring at 4030 Sports Arena Blvd, San Diego in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten, M.D., M.P.H
Public Health Officer
County of San Diego

Date:  November 16, 2020          By:

Brent Panas
Safe Compliance Reopening Team

cc:    City of San Diego
       Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

Steel MMA and Fitness
5910 Santo Road
San Diego, CA 92124

Re:   CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, gyms and fitness centers may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Gyms and Fitness Centers*, published by the California Department of Public Health and CalOSHA, states gyms and fitness centers may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations are occurring at: 5910 Santo Road, San Diego, CA. 92124, in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with.  If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten,
M.D., M.P.H Public
Health Officer
County of San Diego

Date: 12/7/2020                    By: _____

Brent Panas
Safe Reopening Compliance Team

cc:
        Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

Yoga Box – Hilcrest
1450 University Ave., Unit 202
San Diego CA 92103
Amanda Burns

Re:   CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, Fitness Facilities may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Fitness Facilities,* published by the California Department of Public Health and CalOSHA, states Fitness Facilities may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations and no face coverings by patrons and employees is occurring at 1450 University Ave., Unit 202, San Diego in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business. However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.


Wilma J. Wooten, M.D., M.P.H
Public Health Officer
County of San Diego


Date:   November 16, 2020         By:

Brent Panas
Safe Compliance Reopening Team


cc:    City of San Diego
       Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

Yoga Box – North Park
3039 University Ave.
San Diego CA 92104
Amanda Burns

Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, Fitness Facilities may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Fitness Facilities,* published by the California Department of Public Health and CalOSHA, states Fitness Facilities may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations and no face coverings by patrons and employees is occurring at 3039 University Ave., San Diego in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.


                                   Wilma J. Wooten, M.D., M.P.H
                                   Public Health Officer
                                   County of San Diego



Date:  November 16, 2020          By:
                                      Brent Panas
                                      Safe Compliance Reopening Team


cc:    City of San Diego
       Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

Yoga Box – Ocean Beach
2204 Sunset Cliffs Blvd #2B
San Diego, CA 9210
Amanda Burns

Re:   CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, Fitness Facilities may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Fitness Facilities,* published by the California Department of Public Health and CalOSHA, states Fitness Facilities may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations and no face coverings by patrons and employees is occurring at 2204 Sunset Cliffs Blvd #2B, San Diego in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten, M.D., M.P.H
Public Health Officer
County of San Diego

Date:   November 16, 2020          By:   _____
Brent Panas
Safe Compliance Reopening Team

cc:   City of San Diego
Wilma J. Wooten, M.D., M.P.H.



# County of San Diego

Yoga Box – Pacific Beach
909 Grand Ave.
San Diego CA 92109
Amanda Burns

Re:  CEASE AND DESIST HEALTH ORDER VIOLATIONS

Pursuant to the Order of the California Public Health Officer issued on August 28, 2020, and as incorporated by the Health Officer Order and Emergency Regulations in effect throughout San Diego County, Fitness Facilities may operate in compliance with applicable industry guidance. *COVID-19 Industry Guidance: Fitness Facilities,* published by the California Department of Public Health and CalOSHA, states Fitness Facilities may not operate indoors based on the County's current Tier 1 status.

It has been documented that indoor operations and no face coverings by patrons and employees is occurring at 909 Grand Ave., San Diego in violation of the Order of the State Health Officer and the County Order of the Health Officer and Emergency Regulations.

I appreciate the impact these restrictions have on your business.  However, as the responsible party for your facility, it is your duty to ensure that the Orders' are complied with. If you do not comply, we will take actions necessary to enforce the Orders.  Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for *each* violation.

Wilma J. Wooten, M.D., M.P.H
Public Health Officer
County of San Diego

Date:  November 16, 2020         By:

Brent Panas
Safe Compliance Reopening Team

cc:    City of San Diego
       Wilma J. Wooten, M.D., M.P.H.