1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11    STEEL MMA, LLC et al.,                    Case No.:  21-CV-49-CAB-AGS

12                              Plaintiffs,
                                              **ORDER DENYING MOTION FOR**
13    v.                                       **TEMPORARY RESTRAINING**
                                              **ORDER/PRELIMINARY**
14    GAVIN NEWSOM et al.,                      **INJUNCTION**

15                              Defendants.
                                              [Doc. No. 6]
16

17

18          Plaintiffs are twenty-five gyms and fitness centers located in San Diego County.  On

19   December 23, 2020, they filed a complaint in San Diego County Superior Court seeking to

20   enjoin enforcement of various State and County orders restricting indoor operation of their

21   facilities to prevent the spread of the COVID-19 virus.  On January 11, 2021, Defendants

22   Governor Gavin Newsom and the California Department of Public Health removed the

23   case to federal court based on federal question jurisdiction.  28 U.S.C. §§ 1331, 1441.  On

24   February 3, 2021, Plaintiffs filed an ex parte application for a temporary restraining order

25   ("TRO") pending an order to show cause regarding the issuance of a preliminary

26   injunction.  [Doc. No. 6.]   After considering the application, the Court found that the

27   extraordinary remedy of a TRO was not justified, so the Court converted the ex parte

28   application into a motion for a preliminary injunction, giving Defendants an opportunity to

1    respond, Plaintiffs a deadline to reply, and setting a hearing date.  [Doc. No. 8.]   On

2    February 25, 2021, the Court held a hearing on the motion for preliminary injunction with

3    all counsel appearing via video-conference.  At the conclusion of the hearing, the Court

4    denied the motion for preliminary injunction.

5          **I.      Background**

6          The parties, the Court, and indeed *everyone* is very familiar with the COVID-19

7    pandemic and the impact it has had on society.  As a result of the pandemic, most or all

8    state and local governments have enacted a variety of restrictions on public gatherings in

9    an effort to prevent or limit the transmission of the virus. There are numerous court

10   opinions detailing the ongoing COVID-19 pandemic and the various governmental orders

11   restricting public gathering in an effort to prevent the transmission of the virus.  The Court

12   finds it unnecessary to restate these generally applicable facts here.  Accordingly, the Court

13   adopts the relevant portions of the summaries of the ongoing COVID-19 pandemic, and

14   governmental restrictions arising therefrom, detailed in these other opinions, including in

15   particular, *South Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1132-36 (9th

16   Cir. 2021), and *Tandon v. Newsom*, __ F. Supp. 3d __, 2021 WL 411375, at **1-11 (N.D.

17   Cal. Feb. 5, 2021).  *See also* Watt Dec. [Doc. No. 12-1], and Rutherford Dec. [Doc. No.

18   12-2].

19         Here, Plaintiffs challenge the constitutionality of COVID-related restrictions put in

20   place by the State of California and by the County of San Diego on the operation of gyms

21   and fitness centers.  With their opposition to the motion, Defendants offer declarations

22   from James Watt, the Chief of the Division of Communicable Disease Control of the Center

23   for Infectious Diseases at the California Department of Public Health, and George

24   Rutherford, a Professor of Epidemiology, Preventive Medicine, Pediatrics, and History at

25   the University of California, San Francisco School of Medicine, explaining risks of COVID

26   transmission in indoor gyms and fitness centers. Watt Dec. ¶¶ 44-50 [Doc. No. 12-1 at 13-

27   15]; Rutherford Dec. ¶¶ 98-108 [Doc. No. 12-2 at 29-33].  Currently, based on the State's

28   "Blueprint for a Safer Economy" framework, San Diego County falls into Tier 1/Purple,

1  where it has been since early November 2020.  While the County remains in this tier, gyms

2  and fitness centers like Plaintiffs are permitted to operate outdoors only, with certain

3  precautions.  Watt Dec. ¶ 92 [Doc. No. 12-1 at 27]; Rutherford Dec. ¶ 98 [Doc. No. 12-2

4  at 29].  As the COVID infection rate, along with other metrics set forth in the Blueprint,

5  improves in San Diego, the County will be permitted to progress through less restrictive

6  tiers (Tier 2/red, Tier 3/orange, and Tier 4/yellow).  Watt Dec. at ¶¶ 77-81, 92 [Doc. No.

7  12-1 at 23-24, 27].  While Tier 1/purple allows for outdoor operations only, these less

8  restrictive tiers allow for indoor operation of gyms at 10%, 25%, or 50% of capacity,

9  respectively.  *Id.* at ¶ 81 [Doc. No. 12-1 at 24].  Although it is not particularly clear from

10  Plaintiffs' motion papers, at the hearing Plaintiffs clarified that they are asking for an order

11  allowing them to operate at the same capacity they were operating at in October 2020,

12  when San Diego County was in the Tier 2/red level.

13  **II.    Discussion**

14  "A preliminary injunction is an extraordinary and drastic remedy, one that should

15  not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."

16  *S. Bay United Pentecostal Church*, 985 F.3d at 1139 (internal quotation marks and citation

17  omitted) (*emphasis* in original).  Generally, a plaintiff seeking a preliminary injunction

18  must establish four things:

19         1.  A likelihood of success on the merits,

20         2.  That Plaintiff is likely to suffer irreparable harm in the absence of preliminary

21             relief,

22         3.  That the balance of equities tips in Plaintiff's favor, and

23         4.  That an injunction is in the public interest.

24  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  However, "[w]here the

25  government is a party to a case in which a preliminary injunction is sought, the balance of

26  the equities and public interest factors merge."  *S. Bay United Pentecostal Church*, 985

27  F.3d at 1149.  Although Defendants focus their briefing on the first requirement (likelihood

28  of success on the merits), which "is the most important" factor (*Disney Enterprises, Inc. v.*

1  *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)), they argue that Plaintiffs have failed to
2  establish any of the requirements for a preliminary injunction.  As stated at the hearing, the
3  Court agrees.

### A.     Likelihood of Success on the Merits

5  The complaint asserts three claims under 42 U.S.C. § 1983: (1) violation of the free
6  speech clause of the First Amendment; (2) violation of the equal protection clause of the
7  Fourteenth Amendment; and (3) violation of Plaintiffs' Fifth and Fourteenth Amendment
8  due process rights.  As explained at the hearing, and for the reasons set forth below,
9  Plaintiffs have no likelihood of success on any of these claims.

### 1.  First Amendment Claim

11  The complaint alleges that "Plaintiffs operate gyms/fitness centers that provide
12  resources to members of the public to maintain and improve their physical and mental
13  health, as well as personal trainers to provide personal training services, through the
14  expressive use of their persons.  Such expression is protected by free speech rights and free
15  expressive association."  Complaint ¶ 52 [Doc. No. 1 at 26].  At the hearing, Plaintiffs'
16  counsel argued that the First Amendment rights in question involved expression based on
17  bodily movement and analogized the rights in question to those help applicable to dancers
18  who perform in the nude.  Plaintiffs' counsel conceded that no pure speech is implicated
19  by Defendants' COVID-related restrictions on Plaintiffs' indoor operations and specified
20  that Plaintiffs seek to protect their own First Amendment rights, as well as those of
21  Plaintiffs' employees and customers.

22  In opposition to Plaintiffs' motion, Defendants argue that neither the operation of a
23  gym, nor working out inside a gym, nor personal training that occurs indoors at a gym
24  constitute expressive conduct or speech that implicates the First Amendment.  As explained
25  at the hearing, the Court agrees.  Plaintiffs have failed to establish that the First Amendment
26  protects their operation of gyms or that working out/exercising/personal training indoors
27  in a gym is speech or expressive activity protected by the First Amendment.  The court in
28  *Best Supplement Guide, LLC v. Newsom*, No. 220CV00965JAMCKD, 2020 WL 2615022,

1
2
3

at *4 (E.D. Cal. May 22, 2020), rejected similar arguments that COVID-related gym closures unlawfully infringe on freedom of speech, assembly or expressive association, holding:

4
5
6
7
8
9
10
11

> The First Amendment's free speech clause only "affords protection to symbolic or expressive conduct [and] actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003). As Defendants argue, the State and County gym closures plainly restrict non-expressive conduct: operating gyms. The Court lacks any authority for the proposition that operating a gym implicates the First Amendment's free speech protections. . . . *see also United State v. O'Brien*, 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech whenever the person engaging in the conduct intends thereby to express an idea."). Plaintiffs are therefore unlikely to succeed on the merits of this claim. They also fail to raise serious questions going to the claim's merits.

12
13
14
15
16
17
18
19
20
21

> Nor are Plaintiffs likely to succeed on the merits of the freedom of assembly or freedom of association claims. Today, the freedom of association and freedom of assembly are largely viewed as one. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). Parties may only bring an expressive-association claim under the First Amendment if they demonstrate that they are asserting their right to associate "for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* Plaintiffs contend that "[w]hen Fitness System and Covell's staff and customers interact, they engage in expressive association and the advancement of shared beliefs." . . . They do not, however, cite any cases to support the idea that the freedom to associate is designed to protect this type of non-expressive, commercial interaction. Just like the freedom of speech, the rights conferred by the freedoms of assembly and association do not guard against the grievances Plaintiffs claim.

22
23
24
25
26
27
28

*Best Supplement Guide*, 2020 WL 2615022, at *4.  This analysis is equally applicable here. The only cases cited by Plaintiffs in support of their claim that their, their employees', or their customers' First Amendment rights are infringed were cases brought by nude dancing establishments and nude dancers challenging the constitutionality of restrictions on public nudity.  *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) (nude dancing establishment challenging the constitutionality of ordinance banning public nudity).  Nude dancing, however, already falls "within the outer ambit of the First Amendment's

1  protection," *id.* at 289, and Plaintiffs' analogies of gym operation to the operation of a nude

2  dancing establishment, and of gym patrons to nude dancers, are unpersuasive.

3  "Expressive conduct is characterized by two requirements: (1) 'an intent to convey

4  a particularized message' and (2) a 'great' 'likelihood ... that the message would be

5  understood by those who viewed it.'" *Edge v. City of Everett*, 929 F.3d 657, 668 (9th Cir.

6  2019) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). "Because the [Supreme]

7  Court has eschewed a rule that all conduct is presumptively expressive, individuals

8  claiming the protection of the First Amendment must carry the burden of demonstrating

9  that their nonverbal conduct meets the applicable standard." *Id.*

10  Plaintiffs offer no evidence that gym patrons utilize Plaintiffs' facilities with the

11  intent to convey any particularized message.  Nor have they articulated what that message

12  is or demonstrated any likelihood that those viewing that message would understand it.  As

13  Defendants note, unlike nude dancing establishments, which involve performers and

14  audiences, "[g]enerally, people go to a gym to work out, not to watch a performance."

15  [Doc. No. 12 at 17.]  Thus, any expression that occurs indoors at Plaintiffs' gyms does not

16  confer First Amendment coverage to defeat an otherwise valid public health order.  The

17  orders in question here regulate "neither speech nor an incidental, nonexpressive effect of

18  speech."  *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986) (O'Connor, J.,

19  *concurring*).  Rather, they regulate indoor operation of gyms and fitness centers.

20  Accordingly, because Defendants' restrictions on Plaintiffs' indoor operations do not

21  impact any First Amendment speech or expressive conduct, Plaintiff has no likelihood of

22  success on any claim for violation of the First Amendment.

### 2.  Equal Protection Claim

24  At the hearing, Plaintiffs' counsel conceded that if the Court found, as it has, that no

25  protected speech or expression is implicated by Defendants' COVID related restrictions,

26  rational basis review applies to all of Plaintiffs' claims.  Along these lines, the complaint

27  argues that Defendants orders violate the equal protection clause of the Fourteenth

28  Amendment because they lack a rational basis, and other courts have applied rational basis

1    review to equal protection challenges to COVID-related restrictions. *See generally Tandon*

2    *v. Newsom*, No. 20-CV-07108-LHK, 2021 WL 411375, at \*20 (N.D. Cal. Feb. 5, 2021)

3    (applying rational basis review to equal protection challenge of COVID-related

4    restrictions, noting that "other courts considering Equal Protection challenges to COVID-

5    related restrictions brought by business owners have concluded that no suspect class is

6    implicated.").

7        Under rational basis review, "courts must uphold the classification as long as it

8    'find[s] some footing in the realities of the subject addressed by legislation.'" *Id.* at 20

9    (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993)).  "In light of the deferential

10   nature of rational basis review, "every court considering Equal Protection challenges

11   brought by business owners to COVID-related restrictions has upheld the restrictions. . . .'"

12   *Id.* at 21.  The Court finds no reason to depart from these cases, and Plaintiffs cite none to

13   the contrary.  "California has a compelling interest in reducing community spread of

14   COVID-19," *S. Bay United Pentecostal Church*, 985 F.3d at 1142, and it is rational to make

15   distinctions among businesses based on the risks of COVID transmission attendant to each

16   business.  Plaintiffs may disagree with the choices Defendants have made with respect to

17   restricting the operations of gyms as compared with other business, but "rational-basis

18   review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness,

19   or logic of legislative choices.'" *Tandon*, 2021 WL 411375, at \*20 (quoting *Heller*, 509

20   U.S. at 319).  Accordingly, Plaintiffs have no likelihood of success on their Equal

21   Protection claim.

22                          **3.  Due Process Claim**

23       The complaint and motion are vague as to what exact due process rights were

24   purportedly violated here.  Plaintiffs allege only that they "have a fundamental and

25   Constitutionally protected interest in the use and enjoyment of their facilities."  Complaint

26   ¶ 54.  Plaintiffs do not cite any authority for this proposition, and the Court is aware of

27   none.  Moreover, "[e]very court to have addressed the issue of whether COVID-related

28   restrictions violated substantive due process rights has concluded that the plaintiffs were

1    not likely to succeed on the merits of their substantive due process claims." *Tandon*, 2021

2    WL 411375, at *17.  Plaintiffs cite no cases to the contrary.  "[C]ourts have [also] held that

3    in the current COVID-19 crisis, temporary closures of a business do not implicate

4    procedur[al] due process rights." *Xponential Fitness v. Arizona*, No. CV-20-01310-PHX-

5    DJH, 2020 WL 3971908, at *5 (D. Ariz. July 14, 2020) (finding that plaintiff gym did not

6    have a likelihood of success on procedural due process claim based on COVID-related

7    restrictions on operation); *Best Supplement Guide*, 2020 WL 2615022, at *5 (finding no

8    procedural due process violation related to COVID related gym operation restrictions).

9    The Court agrees with these cases.

10       The COVID-related restrictions being challenged here "are legislative in nature

11   because they 'affect all citizens of California and at their most particular direct restrictions

12   towards nationwide groups and classes of individuals and businesses.'" *Culinary Studios,*

13   *Inc. v. Newsom*, No. 1:20-CV-1340 AWI EPG, 2021 WL 427115, at *16 (E.D. Cal. Feb.

14   8, 2021) (quoting *PCG-SP Venture I LLC v. Newsom*, No. EDCV201138JGBKKX, 2020

15   WL 4344631, at *8 (C.D. Cal. June 23, 2020)).  When an "action complained of is

16   legislative in nature, due process is satisfied when the [governmental] body performs its

17   responsibilities in the normal manner prescribed by law.'" *Samson v. City of Bainbridge*

18   *Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (quoting *Halverson v. Skagit Cty.*, 42 F.3d

19   1257, 1260 (9th Cir. 1994)).  Plaintiffs do not contend that Defendants do not have the

20   legal right to enact any restrictions on the operations of businesses as a result of the COVID

21   pandemic; they simply disagree with the substance of Defendants' restrictions as applied

22   to Plaintiffs.  Thus, Plaintiffs do not have a likelihood of success on a procedural due

23   process claim.

24       Further, "[w]hen reviewing the substance of legislation or governmental action that

25   does not impinge on fundamental rights, . . . [courts] do not require that the government's

26   action actually advance its stated purposes, but merely look to see whether the government

27   could have had a legitimate reason for acting as it did." *Wedges/Ledges of California, Inc.*

28   *v. City of Phoenix, Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994).  In light of the COVID-

1    pandemic and the evidence of how the virus is transmitted, and notwithstanding Plaintiffs'

2    arguments about the efficacy or sensibility of requiring gyms to be closed while allowing

3    other businesses to remain open, Defendants could have a legitimate reason for enacting

4    restrictions on any indoor operation of gyms and fitness centers.  Indeed, Plaintiffs concede

5    as much insofar as the only relief they seek is a restriction on indoor operation to 10% of

6    capacity under Tier 2/red (as opposed to no indoor operations under Tier 1/purple).

7    Accordingly, Plaintiffs have no likelihood of success on a substantive due process claim

8    either.

9    **B.    Irreparable Harm and Balance of the Equities/Public Interest**

10   Plaintiffs' failure to demonstrate a likelihood of success on the merits of any of their

11   claims "is fatal to [their] request for [preliminary injunctive relief]," *PCG-SP Venture I*,

12   2020 WL 4344631, at *12, and "the court need not consider the other factors" required for

13   a preliminary injunction. *Disney Enterprises,* 869 F.3d at 856.  For completeness, however,

14   the Court also finds that Plaintiffs establish neither irreparable harm nor that the balance of

15   the equities and public interest favor an injunction.

16   The only irreparable harm Plaintiffs claim to have suffered relates to purported

17   infringement of their First Amendment rights.  Having found that Defendants' orders do

18   not implicate any First Amendment rights, Plaintiffs fail to establish irreparable harm as

19   required for a preliminary injunction.

20   Further, "[g]iven the unique risks of gatherings in spreading COVID-19; the deaths

21   and serious illnesses that result from COVID-19; and the overwhelming strain on the

22   healthcare system, the Court finds that enjoining the State's and County's restrictions on

23   Plaintiffs' gatherings and on Plaintiffs' businesses would not be in the public interest."

24   *Tandon*, at 2021 WL 411375, at *44.  Rather, the public interest here lays with the

25   continued protection of the population as a whole. *See S. Bay United Pentecostal Church*,

26   985 F.3d at 1149–50.  Accordingly, this factor weighs against Plaintiffs as well.

27

28

**III.   Conclusion**

For all of the foregoing reasons, as well as those stated at the hearing, Plaintiffs' motion is denied.  Defendants shall respond to the complaint on or before **March 11, 2021**.

It is **SO ORDERED**.

Dated:  March 1, 2021

_____

Hon. Cathy Ann Bencivengo
United States District Judge

21-CV-49-CAB-AGS